13299

STATE v. FIREMEN'S INSURANCE CO. OF NEWARK, N. J.

(162 S. E., 334)

*Messrs. John M. Daniel, Attorney General, Cordie Page* and *J. Ivey Humphrey, Assistants Attorney General, R. E. Whiting* and *C. T. Graydon,* for appellants

*Messrs. Benet, Shand & McGowan* and *Ashley C. Tobias, Jr.,* for respondent, 

December 11, 1931.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This suit, instituted by the State of South Carolina against the defendant, Firemen's Insurance Company of Newark, N. J., in the County Court for Richland County, August 2, 1928, has for its purpose the recovery of the sum of $500.00 as a penalty under the provisions of Sections 4090 and 4092 of Volume 3 of the Code of 1922. The case was brought to trial in the said Court for Richland County January 8, 1930, before Hon. M. S. Whaley, presiding Judge, resulting in an order of nonsuit, from which order the plaintiff has appealed to this Court. For a clear understanding of the issues involved we quote herewith the complaint in the case:

## COMPLAINT

"The plaintiff, complaining of the defendant, alleges:

"1. The defendant, above named, is a corporation engaged in the business of writing fire insurance, duly chartered and organized, and licensed as a foreign insurance company to do business in this State; subject, however, to the laws of the State and to the penalties prescribed for the violations thereof.

"2. On or about the 31st day of May, 1928, the defendant willfully violated, and failed to observe and comply with, the provisions of Section 4090, Code of 1922, Vol. 3; the said violation being in manner and form as follows, to wit: The defendant, having full knowledge of the fact that the insurance agency licenses issued to the members of the H. C.

Hicks Agency, Spartanburg, S. C., had expired on March 31st, 1928, and had not thereafter been renewed by the Insurance Commissioner, nevertheless continued, in deliberate and willful violation of the statutory requirements relating to the operations of insurance agencies, to do business and to write, or cause to be written, policies or contracts of insurance, and to have the policies countersigned and issued, by and through the said H. C. Hicks Agency, although knowing the said agency and the members thereof, to be unlicensed and not regularly commissioned to transact the business of insurance in this State. The defendant, acting by and through the H. C. Hicks Agency as aforesaid, issued, as of the date mentioned, a policy of insurance to B. R. Littlejohn, on property located in Spartanburg County, in the State of South Carolina.

"3. By reason of its willful violation of the laws of this State, as above set forth, the defendant has become subject to, and is liable to pay, under the provisions of Section 4092, Code of 1922, Vol. 3, a penalty of Five Hundred and no/100 ($500.00) Dollars, to be collected and recovered in an action brought in the name of the State.

"Wherefore, the State of South Carolina prays judgment against the defendant, Firemen's Insurance Company of Newark, New Jersey, for the sum of Five Hundred and no/100 ($500.00) Dollars, and for the costs and disbursements of this action."

The defendant, by its answer, denied the allegations of the complaint.

The Section 4090 of the Code of 1922, referred to in the complaint, reads as follows: "(4090) § 37. *All Policies to be Issued Through Resident Agents—Exceptions.*—No fire insurance company or association not incorporated under the laws of this State, authorized to transact business here, shall make, write, place, or cause to be made, written or placed, any policy, or contract of insurance of any kind or character, or any general or floating policy, upon property

situated or located in this State, except after said risk has been approved, in writing, by an agent who is a resident of this State, regularly commissioned by the company doing business in this State, who shall countersign all policies so issued, and receive the commission therein when the premium is paid, and the State shall receive the license fees required by law to be paid on the premiums collected for insurance on all property located in this State. Nothing in this chapter shall be construed to prevent any insurance company or association, authorized to transact business in this State, from issuing policies at its principal or department offices, covering property in this State: Provided, That such policies are issued upon application procured and submitted to such company by agents who are residents of this State, regularly commissioned to transact the business of insurance herein, and who shall countersign all policies so issued and receive the commission thereon when paid. No provision of this Section is intended to or shall apply to direct insurance covering the rolling stock of railroad corporations or property in transit while in the possession and custody of railroad corporations or other common carriers."

Section 4092, Vol. 3, of the Code of 1922, referred to in the complaint, reads as follows:

"(4092) § 39. *Penalty for Violation of Provisions.*— Any insurance company or association willfully violating or failing to observe and comply with any of the provisions of Sections 36, 37 and 38 applicable thereto, shall be subject to and liable to pay a penalty of five hundred dollars for each violation thereof; and for each failure to observe and comply with any provisions of the said Sections, such penalty may be collected and recovered in an action brought in the name of the State, in any Court having jurisdiction thereof. Any insurance company or association which shall neglect and refuse for thirty days after judgment in any such action to pay and discharge the amount of such judgment, shall have its authority to transact business in this State revoked by the Insurance Commissioner, and such revocation shall

continue for at least one year from the date thereof; nor shall any insurance company or association, whose authority to transact business in this State shall have been so revoked, be again authorized or permitted to transact business herein, until it shall have paid the amount of such judgment, and shall have filed in the office of the Insurance Commissioner a certificate, signed by its president or other chief officer, to the effect that the terms and obligations of the provisions of this Article are accepted by it as a part of the conditions of its right and authority to transact business in this State."

For the purpose of showing the proceedings in the trial of the case, we quote from the transcript of record the following:

"Testimony was offered by the plaintiff, in substance, as follows:

"The defendant admitted its issuance of the policy in question through the H. C. Hicks Agency in Spartanburg, South Carolina; and that the policy was countersigned by A. R. Coleman, as agent.

"It is admitted by plaintiff that Coleman was a resident of the State of South Carolina; and also that the defendant, Firemen's Insurance Company, as far as they were able to do so, had commissioned him as agent to write insurance. In this connection, the plaintiff's position was stated to the effect that Coleman was not authorized to act as agent under the State laws and, on that account, was not duly commissioned to write insurance.

"Sam B. King, Insurance Commission, was called as a witness for plaintiff. He testified that he had assumed office as Insurance Commissioner on April 2, 1928, succeeding Mr. John J. McMahon, and that he did not commission the H. C. Hicks Agency or any member of that agency; that he did not issue a license either to H. C. Hicks or A. R. Coleman.

"On objection by defendant to testimony concerning the issuance of the license by the Insurance Commissioner, the

positions of the defendant and plaintiff were stated, respectively, as follows:

"Mr. Shand (for the defendant) : We object on the ground that this is a suit for penalty under Section 4090, Vol. 3, of the Civil Code, 1922. The violation charged in the complaint is, that the defendant, having full knowledge of the fact that the insurance agency licenses issued to the members of the H. C. Hicks Agency, Spartanburg, S. C., had expired on March 31, 1928, and had not thereafter been renewed by the Insurance Commissioner, nevertheless continued, in deliberate and willful violation of the statutory requirements relating to the operations of insurance agencies, to do business and to write, or cause to be written, policies or contracts of insurance, and to have the policies countersigned and issued by and through the said H. C. Hicks Agency, although knowing the said agency, and the members thereof, to be unlicensed and not regularly commissioned to transact business of insurance in this State. And the complaint goes on and states that the agency issued this policy.

"Now, it is admitted by the defendant that the policy described in the complaint was issued by the defendant through the H. C. Hicks Agency of Spartanburg, on May 31st, 1928, and countersigned by A. R. Coleman, a resident of South Carolina.

"It is admitted by the plaintiff that the agent countersigning this policy was a resident of South Carolina, and commissioned by the defendant, Firemen's Insurance Company.

The section with which this defendant is charged with violating, Section 4090, provides that no fire insurance company shall write any policy on property in this State except after the risk has been approved by an agent who is a resident of this State, regularly commissioned by the company doing business in this State, who shall countersign all policies so issued.

"As the agent who countersigned the policy in this suit was a resident of this State, regularly commissioned by the defendant company, the fact that he was not licensed by the

State, if that be so, would not constitute a violation of Section 4090, and Section 4092, which provides for the penalty, and under which this suit is brought, specifically provides that 'any insurance company willfully violating or failing to observe and comply with any of the provisions of Sections 36, 37 and 38 (Sections 4089, 4090 and 4091 of the Code), shall be subject to and liable to pay a penalty of $500.00.'

"The defendant, therefore, objects to any evidence as to whether or not the defendant's agent in this matter who countersigned this policy, was not licensed as an agent by the Insurance Commissioner, as the only requirement of that Section 4090, is that he be regularly commissioned by a company doing business in this State and that he be a resident of this State.

"Mr. Whiting (for the plaintiff) : Our position, your Honor, is that under the statute, Section 4090, a resident agent who writes policies must be a duly commissioned agent under the laws of this State; that he cannot be a duly commissioned agent except by reason of a license issued to him by the Insurance Commissioner; that no company can commission as its agent in this State any man who, in order to do the business of the company, would act unlawfully under the laws of this State. It must be such a person as is recognized by the Insurance Department under the laws of this State, and therefore, must be licensed to do business. The two things are conjoint—the commission by the company and the position of the agent as qualified under the laws of this State, to represent the company in the State."

Following the statement of counsel, as above set forth, the Court ruled that the statutory provision under which the case was brought was not applicable and had nothing to do with the licensing of the agency through which the policy in question had been issued. After this ruling by the Court, for the purpose of the record for appeal, subject to the stated objections by defendant's counsel and the said ruling by the trial Judge, the plaintiff introduced testimony in the case

on the question of the said alleged willful violation of the law by the defendant in issuing the said policy through an agent or agency not licensed or authorized under the law of this State. Upon the close of the introduction of the testimony, introduced as aforesaid, counsel for the defendant moved for a nonsuit upon the following grounds: "The defendant asks for a nonsuit in this case on the grounds that the complaint in this action was brought for violation of Section 4090, Volume 3, of the Civil Code of 1922, in that the policy in question was written by an agent who had not been licensed by the State of South Carolina. The penalty sought is under Section 4092, which provides that the penalty shall apply only in the case of the violation of Sections 4089, 4090 and 4091. The evidence before the Court shows that the agent who countersigned the policy in question was regularly commissioned by the company and was a resident of South Carolina. This is the only requirement of Section 4090, and the fact that he was not licensed by the State does not constitute a violation of Section 4090. Under the terms of Section 4092 the penalty is, therefore, not applicable to the violation charged in the complaint."

Following this motion the trial Judge ordered a nonsuit upon the grounds presented, and ruled that the testimony offered by the plaintiff was irrelevant and ordered it stricken out. From this order and holding of the trial Judge the plaintiff has appealed to this Court.

Under the view we take of the case it will have to be remanded for a new trial and for that reason we shall not discuss the force and effect of the testimony offered by the plaintiff. We state, however, that in our opinion the proposed testimony was competent to go to the jury on the question of fact involved. Appellant's specific allegations of error imputed to the trial Judge are as follows:

"1. His Honor, the trial Judge, erred in excluding and holding irrelevant:

"(a) The proposed testimony of plaintiff's witness, Sam B. King, and;

"(b) The correspondence offered in evidence by plaintiff."

It is respectfully submitted that such testimony was competent and relevant as tending to show a willful violation of the insurance laws of this State, within the statutory provisions under which this action was brought.

"2. His Honor, the trial Judge, erred in holding that it was not a violation of the provisions of Section 4090 for the defendant company to transact the business of insurance in this State through an unlicensed agent. It is respectfully submitted that an unlicensed agent is not a resident agent regularly commissioned within the meaning of such statute.

"3. His Honor, the trial Judge, erred in granting a nonsuit. It is respectfully submitted that the proof offered in the case tended to show a willful violation of the insurance laws of the State as charged in the complaint."

For the reasons stated above, exception 1 is sustained. Exceptions 2 and 3 will be considered together.

In accord with the position taken in the lower Court, it is the contention of respondent, briefly stated, that whether or not the defendant's agent, Coleman, was licensed by the Insurance Commissioner of South Carolina, has no bearing on the case for the reason that the suit is for the violation of a specific section of the Code, Section 4090, and that that Section does not require that an agent be licensed "but only that he be a resident of the State and regularly commissioned by the company." While the respondent concedes, as we understand its position, that the law of this State requires each agent writing insurance within the State to procure from the Insurance Commissioner a license, paying therefor the required fee, it contends that that burden or duty is, under the statute, upon the agent, and contends, further, that "there is nowhere in the statutes a provision requiring a company to write policies only through licensed agents." In connection with this view respondent calls attention to the general rule that the Section 4090 of the Code under

which the penalty is sought to be collected is a penal statute and must therefore be strictly construed, and under this rule the respondent contends that it can in no sense be made to respond under this action. In support of this position the following authorities, among others, are called to our attention by the respondent: *Hall v. Norfolk & W. R. Co.*, 44 W. Va., 36, 28 S. E., 754, 41 L. R. A., 669, 67 Am. St. Rep., 757, 25 R. C. L., 859, 1083 and 1086; *Aylsworth v. Curtis*, 19 R. I., 517, 34 A., 1109, 33 L. R. A., 110, 61 Am. St. Rep., 786. While generally speaking there is no doubt of the correctness of the principle stated under these authorities as to the rule applicable in construing a penalty statute, in construing Sections 4090 and 4092 of the Code under which this action is brought it must be kept in mind that there are other provisions of the Code to be considered, which are pertinent provisions of the insurance laws of this State, as follows:

"(4068) § 15. *Affidavit to be Filed.*—Before issuing a license to any company to do business in this State, the Insurance Commissioner shall require in every case that each such company shall file with him the affidavit of its president or chief executive officer so as to bind the company, that it has not violated any of the laws of this State, and that it accepts the terms and obligations imposed by the laws of this State as part of the consideration for such license."

"(4069) § 16. *Agents to Obtain License from Commissioner.*—Before doing business in this State for any insurance company or association, each agent shall procure from the Insurance Commissioner a license for which he shall pay one-half dollar as an annual department license fee. Before issuing such license the Insurance Commissioner shall determine that the agent is a fit and proper person. Such license shall expire on March 31 of each year. The Insurance Commissioner shall have power to revoke said license after thirty days' notice and examination whenever it shall appear that said agent has violated the laws of this State, or has willfully deceived or dealt unjustly with a citizen of

this State: Provided, That agents under bond may commence work upon notice and application for license. being mailed to the Insurance Commissioner. Copies of all forms of policy contracts issued by companies or associations licensed to do business in this State shall be filed with the Insurance Commissioner."

"(4072) § 19. *Insurance Companies to do Business Only Through Authorized Agents—Commission—When License may be Revoked.*—That it shall be unlawful for any insurance company doing business through agents in the State of South Carolina to write, place or cause to be written, placed or renewed any fire, marine, accident, health, liability, plate glass, steam boiler, burglary, or theft, sprinkler leakage, fly wheel, automobile property damage, credit or workman's collective insurance, or fidelity and surety bond covering any risk or on property located in the State of South Carolina, except through or by duly authorized agent or agents of such insurance company or association residing and doing business in this State. The full premium shall be paid to such agents who are entitled to and shall receive the same commission on such business as the company allows them on other business of the same class. The payment of a fee or any other consideration than the full commission is held a violation of law. Agents who may sign or insurance companies who may cause to be signed any policy or indemnity contract as the resident agent of an insurance company and fails to collect the full premium for such insurance and retain the proper commission which is due such agent may have their license revoked as the penalty for aiding in an evasion of the law: Provided, however, that agents licensed under the insurance laws of this State may write insurance at the request of other agents or brokers and allow said agents or brokers not exceeding one-half of the commissions which they receive on the business written."

"(4087) § 34. *Foreign Insurance and Other Companies Must Obtain License.*—Every foreign insurance company of any class—fire, life, marine, surety, security, guarantee, hail-

storm, live stock, accident, plate glass, and other like insurance companies—foreign land associations, foreign building and loan associations, foreign banking associations, and all other like classes of like business not incorporated under the laws of South Carolina, except national banks and except benevolent institutions organized under the grand lodge system, shall each, before transacting any business in this State, pay an annual license fee of one hundred dollars to the Insurance Commissioner on or before the thirty-first day of March in each year, to be deposited by him in the treasury of the State.

*"The license issued by the Insurance Commissioner shall give to the company obtaining the same power and authority to appoint any number of agents to take such risks or transact any business of insurance in each and every county of the State, and the same shall be so granted as to expire on the 31st of March of each year. But the Insurance Commissioner must be notified of such appointment before such agent takes any risks or transacts any business, giving the postoffice address and residence of such agent."* (Italics ours.)

These Sections of the Code, Sections 4068, 4069, 4072, 4090, 4092 and 4087, which are a part of the general statutory laws of the State, must be construed together, and in construing the same the following rule must be observed: "The rule that a penal statute must be strictly construed does not prevent the Courts from calling to their aid all the other rules of construction and giving each its appropriate scope, and is not violated by giving the words of the statute a reasonable meaning according to the sense in which they were intended, and disregarding captious objections and even the demands of exact grammatical propriety. When the purpose of the law is manifest, strict construction does not militate against any departure from the primary meaning of words within the reasonable scope thereof." 25 R. C. L., 1085.

We also call attention to the following cases which are in point on the question involved: *Mills v. Railway*, 82 S. C., 242, 64 S. E., 238; *Huguelet v. Warfield*, 84 S. C., 87, 65 S. E., 985; *City of Anderson v. Fant*, 96 S. C., 5, 79 S. E., 641; *Rookard v. Railway*, 89 S. C., 371, 71 S. E., 992; *State v. Fidelity & Deposit Company*, 114 S. C., 511, 104 S. E., 182.

In our opinion, giving to the sections under which the suit was brought the meaning intended by our law-making body, an agent who may represent an insurance company must be not only a resident agent but must also be "regularly commissioned," and a person cannot be "regularly commissioned" by the company unless approved, that is, licensed, by the State's proper officer—the Insurance Commissioner.

It is therefore the judgment of this Court that the exceptions be and are hereby sustained, the order of nonsuit reversed, and the case remanded for a new trial.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE STABLER concur.

MESSRS. JUSTICES COTHRAN and BONHAM dissent.

MR. CHIEF JUSTICE BLEASE (concurring) : A vital consideration to a correct decision in this case, and one which, in my opinion, justifies the position taken by Mr. Justice Carter, is the thought expressed in *Owen v. Insurance Co.*, 84 S. C., 253, 66 S. E., 290, 292, 137 Am. St. Rep., 845, where Mr. Justice Hydrick said: "The defendant, a foreign insurance company, had not legal right to do business in this State, except upon such terms and conditions as the State has seen fit to impose; and, when it came here to do business, it was bound to take notice of our laws."

It has also been held that the business of insurance is affected with such public interest that the power to legislate thereabout may be exercised and exerted "to the extent necessary to make proper regulation effective, provided constitutional rights are not infringed"; and that "it is important

for the protection of the interests of the people of the State that the business should be in the hands of competent and trustworthy persons." *La Tourette v. McMaster,* 104 S. C., 501, 89 S. E., 398, 399; affirmed by U. S. Supreme Court, 248 U. S., 465, 39 S. Ct., 160, 63 L. Ed., 362. Similarly, in *O'Gorman & Young v. Insurance Co.,* reported in 282 U. S., 251, 51 S. Ct., 130, 131, 75 L. Ed., 324, it was said: "The business of insurance is so far affected with a public interest that the State may regulate * * * the relations of those engaged in the business."

This fundamental principle which underlies the interpretation and construction to be placed on insurance legislation was evidently in mind in the adoption of the statutory provision, contained in Section 4068 of the Code, that a foreign insurance company, desiring to engage in business in this State, cannot procure a license from the insurance commissioner, until it has filed with him the affidavit of its president or chief executive officer, "so as to bind the company," that "it accepts the terms and obligations imposed by the laws of this State as part of the consideration for such license."

The statutory provisions which follow Section 4068 in the Code furnish a chart to the public as well as to insurance companies and their agents of the insurance methods that must be followed in order to conduct a business of insurance in this State. Since the public must deal with an insurance company only through the company's agents, it is of the highest importance that the public shall be protected against irresponsible agencies. This is recognized and provided for by Section 4069 of the Code, which prescribes the persons qualified under its terms who may lawfully act as insurance agents. An insurance company cannot give any person the right to act as its agent in transacting the business of insurance in this State until the Insurance Commissioner has passed on the appointment, determined "that the agent is a fit and proper person," and, conformably to such determination, issued an agency license, which (carrying the Insurance Commissioner's recommendation "that the agent is a fit and

proper person" with whom the public may deal safely in an insurance way) is subject to be revoked "after thirty days' notice and examination whenever it shall appear that said agent has violated the laws of this State, or has wilfully deceived or dealt unjustly with a citizen of this State."

In *Brunson v. Bankers' Life Ins. Co.*, 140 S. C., 31, 138 S. E., 522, 524, the agency statute received the construction: "A separate license is to be procured for each company that a person works for."

In *Ballentine v. Covington*, 109 S. C., 217, 96 S. E., 92, 93, an unlicensed agent who had written a policy of life insurance was held to have acted "in violation of law," and, therefore, not entitled to the protection of the law in the contract he had made, since the object of the insurance statute is not for revenue only, "but to protect the public from fraud and imposition and not to allow unfit and improper persons to solicit insurance."

Section 4090 has the provision that an insurance company, not incorporated under the laws of this State, may not issue a policy of fire insurance upon property situated or located in this State, except after the said risk has been approved, in writing, and the policy countersigned, "by an agent who is a resident of this State, regularly commissioned by the company doing business in this State"; or, as expressed in slightly different language in the proviso at the end of the Section, "by agents who are residents of this State, regularly commissioned to transact the business of insurance herein."

I cannot think that our insurance laws should be given such interpretation and construction as to authorize a foreign insurance company to transact its business in this State through a person who, if he represents the company at all, must represent it in violation of the law.

The obvious purpose of the entire body of the insurance laws, taken as a whole, is that the Insurance Commissioner, for the protection of the interest of the people of the State, shall have supervision and control over the great business of

insurance which is transacted by foreign insurance companies in this State. Section 4090 of the Code is but one of the many Sections in the chapter comprising the insurance legislation. To give this single Section such interpretation and effect, as to permit foreign insurance companies to be represented by agents operating in violation of other Sections of the same general statutory law, "would be to sacrifice the legislative will to the mere form and phraseology of its expression." *Trammell v. Mfg. Co.,* 102 S. C., 483, 86 S. E., 1057, 1058. The requirement of an agency license, based on approval of the fitness of the agent and subject to be revoked if he afterwards deals unjustly with the public, gives the Insurance Commissioner his greatest power of proper supervision and control in insurance matters.

The principles of statutory construction sanctioned in our decisions are but guides to the application of the "rule of reasonable, sensible construction, having in view effectuation of the legislative purpose." *Crescent Mfg. Co. v. Tax Commission,* 129 S. C., 480, 124 S. E., 761, 765. "However plain the ordinary meaning of the words used in a statute may be, the Courts will reject that meaning, when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature, or would defeat the plain legislative intention; and if possible will construe the statute so as to escape the absurdity and carry the intention into effect." *Stackhouse v. County Board,* 86 S. C., 419, 68 S. E., 561, 562.

The provision made by Section 4090, even when considered together with Section 4092, which provides the penalty for its violation, must be regarded as remedial as well as penal; and, therefore, the rule applies, as was stated in *Trammell v. Mfg. Co., supra,* that, "insofar as it is remedial, it should be construed liberally, to suppress the mischief it was designed to remedy." This general rule extends to the consideration of the penal provision of the statute for—while a statute, insofar as it is penal, should be strictly construed to prevent injustice or oppression—it has always been

recognized that, even as to a penal statute, the construction should not be so strict as to defeat its obvious purpose. *Mills v. Ry. Co.,* 82 S. C., 242, 64 S. E., 238, 239; *Huguelet v. Warfield,* 84 S. C., 87, 65 S. E., 985; *City of Anderson v. Fant,* 96 S. C., 5, 79 S. E., 641; *Crescent Mfg. Co. v. Tax Commission, supra.* The controlling principle which should govern our considerations in matters of this kind is well stated in *Mills v. Ry. Co., supra,* where it.is said that "the legislative design in statutory enactment ought not to be cut short by narrow verbal distinctions, nor enlarged into oppression by giving to the words used too broad a signification."

Other like considerations have been announced in still more recent decisions, viz.: All rules of statutory construction yield to the principle that the Court must ascertain the real intention of the Legislature. *State v. Brown,* 154 S. C., 55, 151 S. E., 218. The Court will reject that meaning of the words of the statute which would lead to absurd consequences. *Robson v. Cantwell,* 143 S. C., 104, 141 S. E., 180. The Court, in construing a statute containing inconsistencies, will look to "the mischief sought to be avoided and the remedy intended to be afforded." *Law v. Prettyman & Sons,* 149 S. C., 178, 146 S. E., 815, 817. Where the Section in question, construed with other Sections of the Article in question, constitutes or creates an ambiguity, the Court may go back to the original Act and trace the real meaning intended by the Legislature. *Palmetto Lumber Co. v. Ry. Co.,* 154 S. C., 129, 151 S. E., 279.

The insurance legislation of this State dates back to the Statute of 1869 (14 Stat., 204), in which (by Section 1) it was made unlawful for any agent of any insurance company, not incorporated by the laws of this State, to take risks or transact any business of insurance in this State, without first obtaining a license from the Comptroller Genral; and (by Section 2) it was provided that, before such license could be issued, there should be filed with the Comptroller General a certified copy of the charter of the company

and also a certified copy of the vote or resolution of the trustees or directors of the company appointing him such agent, accompanied by a warrant of appointment under the official seal of the company and signed by the president and secretary.

The next important insurance statute was the Act of 1888 (20 Stat., 62), making it unlawful for any insurance company not incorporated under the laws of this State, or any agent of such company, to take risks or transact any business of insurance in this State without first obtaining a license from the Comptroller General, which license should, however, give said company "the power and authority to appoint any number of agents to take such risks, or transact any business of insurance in each and every county of the State: *Provided, the Comptroller General is notified of such appointment before the said agent takes any risks or transacts any business as aforesaid, giving the postoffice address, residence, and a certified copy of the resolution appointing such agent or agents, duly signed by the President and Secretary of such company.*" Section 1.

The next forward step in insurance legislation was the Act of 1900 (24 Stat., 394), in relation to the transaction of business by fire insurance companies. Section 1 of such Act is the same as the present Section 4090 of the Code, except that in the original Act the general purpose of the Act was expressed as being "to the end that the State may receive the taxes required by law to be paid on the premiums collected for insurance on all property located in the State."

The Code of 1902 incorporated in its provisions the portions of the Statutes of 1869 and 1888, which designated with particularity the mode prescribed for insurance companies to follow in issuing commissions to agents, and which had to be followed in order to give authority to such agents to engage in business, representing insurance companies, in the State of South Carolina.

The State Insurance Department was not established until the Act of 1908 (25 Stat., 999), which provided an In-

surance Commissioner and placed upon him the duties theretofore imposed on the Comptroller General. In this Act there was no provision which changed in any other important respect the previously existing insurance laws of the State.

The Act of 1909 (26 Stat., 7) enlarged the insurance regulations, and contained the requirement now existing as Section 4068 of the Code, requiring a covenant on the part of the company to accept the terms and obligations imposed by the insurance laws of the State as part of the consideration for its license to enter the State.

In 1910 (26 Stat., 774), the agent's license requirement was adopted. This requirement was designed to give the Insurance Commissioner a more complete control and supervision over the agents representing the companies, and as insurance companies have to do business through agents, the natural consequence of the Act was that the Insurance Commissioner was given more complete supervision and control over the business of the companies. That the requirement of this Section of the statute was intended to apply to companies as well as to agents clearly appears from the proviso : "Copies of all forms of policy contracts issued by companies or associations licensed to do business in this State shall be filed with the Insurance Commissioner." Section 16. Various other Sections of the Act of 1910 had relation altogether to regulation of the business of insurance as conducted in this State by the insurance companies, and were designed to supplement existing legislation for the purpose of increasing the power of the Insurance Commissioner in order to give him still greater latitude of supervision and control over such business.

In the 1912 codification of the insurance laws of the State, the requirement that an agent procure a license authorizing him to represent an insurance company, before doing any business for such company, was regarded and treated as superseding the previously existing requirement that the company furnish the Insurance Commissioner (Comptroller General) with "a certified copy of the resolution appointing

such agent or agents, duly signed by the President and Secretary of such company." This mode of commissioning insurance agents, which, provided by the Act of 1888, became a part of the general statutory law of the State in the Code of 1902, was dropped from the 1912 Code; and the agency license requirement, taken from the Act of 1910, was inserted in its stead.

The Act of 1915 (29 Stat., 219), extending to domestic as well as to foreign insurance companies "doing business through agents in the State," added to the general statutory law provided by the Code of 1912, by making it unlawful for any insurance company to write policies of fire insurance, and other specified policies, "except through or by the duly authorized agent or agents of such insurance company or association residing and doing business in this State." One of the objects of this statute, as expressed in its title, was "to provide for the division of the commissions"; and the statute extends its provisions to other insurance companies as well as to fire insurance companies.

The Code of 1922 follows the Code of 1912, incorporating the agent's license requirement and omitting the earlier statutory provision which governed the commissioning of agents prior to the adoption of the agents license statute. Section 4072, embracing the statutory provision of the Act of 1915, follows the requirement of that Act for the issuance of policies by insurance companies through duly authorized agents; and Section 4090 follows the requirement contained in the original Act of 1900 for the insurance of policies by agents regularly commissioned by the company.

It does not seem important whether the words are "duly authorized," as in Section 4072, or "regularly commissioned," as in Section 4090. It was clearly the legislative design in both instances that the insurance company, doing business through agents in this State, should have no other agents than those lawfully empowered under the terms imposed by the State's insurance laws to represent the company in transacting its business of insurance. It is obvious

that, before the agent's license law passed in 1910, a foreign fire insurance company could not regularly commission an agent—or confer authority to take risks or transact any business of insurance—except by compliance with regulation which required that the company should file with the designated state official "a certified copy of the resolution appointing such agent or agents, duly signed by the President and Secretary of such company." It is equally obvious that the mode of commissioning the agent was intended to be changed by the requirement of the Act of 1910 that the agent should procure a license; and that, thereafter, a foreign insurance company could not regularly commission an agent to represent it in this State, except by compliance with the changed requirement.

The defendant corporation, as a foreign insurance company seeking to do business in this State under privilege granted by the State laws, was bound to take notice of this change in the insurance regulations, and to conform thereto in making appointments in this State.

The interchange of correspondence between defendant corporation and the Insurance Commissioner's office, offered in evidence by appellant, shows the departmental interpretation of the statute, which was known to defendant corporation, and which was accepted by it without question. Months before the controversy in this particular case, Insurance Commissioner John J. McMahan, the predecessor in office of Mr. Sam B. King, the present Insurance Commissioner, wrote the Firemen's Insurance Company, under letter of date December 17, 1927, calling attention to complaints that parties referred to in previous correspondence had been writing policies of insurance although they had not been licensed as agents. In response, Mr. Neal Bassett, president of the Firemen's Insurance Company, under his letter of date December 20, 1927, wrote the Insurance Commissioner as follows:

"As to their solicitation of or binding insurance prior to the time they are licensed, *permit us to say that no appointee*

*of this company is ever authorized to represent the company in any State until after such appointee has been duly licensed by the State.* We quite understand that the law of your State (and we believe of every other State) requires that before a local agent of an insurance company can legally bind a company in a State he must be licensed by the State. * * *

"*No commission of authority has yet been sent to these appointees and none will be sent until they are licensed to do business by the State. This is our practice.*"

It is a recognized aid of statutory interpretation that usage may be considered in the construction of an ambiguous statute. *Barksdale v. Morrison, Harp.* (16 S. C. L.), 101. The practical construction given to a statute by public officers and acted on by the people is not only to be considered, but in case of doubt will be regarded as decisive. *Gill v. Board of Commissioners v. Wake County,* 160 N. C., 176, 76 S. E., 203, 43 L. R. A. (N. S.), 293; *City of Richmond v. Drewry-Hughes Co.,* 122 Va., 178, 90 S. E., 635, 94 S. E., 989; *State v. Board of Control,* 84 W. Va., 417, 100 S. E., 215; *St. Paul, etc., R. Co. v. Phelps,* 137 U. S., 528, 11 S. Ct., 168, 34 L. Ed., 767; *Kern River Co. v. United States,* 257 U. S., 147, 42 S. Ct., 60, 66 L. Ed., 175; *First National Bank v. Missouri at inf. of Barrett,* 263 U. S., 640, 44 S. Ct., 213, 68 L. Ed., 486; *Swendig v. Washington Water Power Co.,* 265 U. S., 322, 44 S. Ct., 496, 68 L. Ed., 1036.

That the above construction given to the requirement of Section 4090 is also fully warranted by the plain and ordinary meaning of the terms used in the Section, independently of the aids of statutory construction that have been discussed, seems also to be clearly evident.

The word "regular" is defined as meaning "duly authorized; conformable to law or custom." The word "regularly" is defined as meaning "in a regular manner; in a custom or method, according to rule or established mode."

"Commission" is defined as meaning "to appoint; empower, delegate." In the connection in which it is used in Section 4090 of the Code, it obviously means "empower."

The expression "an agent, regularly commissioned," may, therefore, under the ordinary acceptation and meaning of the term, be considered as equivalent to "an agent lawfully empowered"; or, in other words, to an agent authorized under the insurance laws of the State to represent the insurance company in transacting its business of insurance in a lawful manner.

The unpublished opinion of his Honor, United States District Judge Ernest F. Cochran of the Eastern District of the State of South Carolina, rendered in the case of *State ex rel. Vernon C. Earle v. Sam B. King, Insurance Commissioner*, 54 F. (2d), 941* has been urged upon us as expressing a contrary point of view to that above expressed. The case is, however, one which involves the administration of the State laws in the exercise of the functions of state government; and, in regard to controversies of such character, we have the high sanction of the Federal Supreme Court for taking the position that the State Court is charged with the responsibility and duty of saying what the State laws mean.

In *Jones v. Prairie Oil & Gas Co.,* 273 U. S., 195, 47 S. C., 338, 339, 71 L. Ed., 602, Mr. Justice Holmes, speaking for the United States Supreme Court, said that "the exclusive authority to enact those (state) laws carries with it *final* authority to say what they mean."

In *Fenner v. Boykin,* 271 U. S., 240, 46 S. Ct., 492, 493, 70 L. Ed., 927, holding that a Federal Court should not enjoin the execution of a state statute dealing in futures, Mr. Justice McReynolds said: "An intolerable condition would arise, if, whenever about to be charged with violating a state law, one were permitted freely to contest its validity by an original proceeding in some Federal Court."

The administration of the laws enacted for the regulation of the business of insurance in this State was placed by express statutory provision on the shoulders of the Insurance Commissioner, with the duty imposed upon him to make

---

* Dated March 11, 1929. Published 1932.

rulings and decisions in administrative matters. Any ruling or decision that he may make is subject, nevertheless, to review; and the mode of review is specifically prescribed by statute.

Section 4065 provides: "That any order, ruling or decision of the Insurance Commissioner in all matters, either *of law* or discretion, within the jurisdiction of his department, shall be subject to review by *certiorari* or mandamus proceedings before any Circuit Judge or Justice of the Supreme Court, which may be held at chambers or in open Court, upon thirty days' notice to the Insurance Commissioner."

In the case where the ruling of District Judge Cochran was made, the foreign insurance corporation, which is the defendant in the present action, failed to follow the mode prescribed by the above-quoted statutory provision, and sought construction of the State insurance statutes in the Federal Court. The District Judge, assuming and exercising jurisdiction, undertook to supervise and determine the administration of the State statutes before the question of the construction to be given such statutes had been passed upon by the State Court. The opinion, rendered under such circumstances—except only to the extent that its reasoning satisfies and is convincing—is not entitled to weight in controlling the construction to be given by this Court to the state laws. For the reasons that have already been stated, the opinion of his Honor, Judge Cochran, should not be followed by this Court, however much we respect his views.

It is an elementary rule of statutory construction that sections which are part of the general statutory laws of the State must be construed together so as to harmonize them if possible. *Rookard v. Ry. Co.,* 89 S. C., 371, 71 S. E., 992; *State v. Fidelity & Deposit Co., of Maryland,* 114 S. C., 511, 104 S. E., 182; *Gordon v. Bell,* 116 S. C., 466, 108 S. E., 186. All regulations contained in the Code, in the chapter on insurance, serve the general purpose to place the business of insurance in the State under such effective super-

vision and control of the State Insurance Department as to assure: First, the betterment of insurance conditions "for the protection of the interests of the people of the State"; and, second, the receipt by the State of the taxes required by law to be paid on the premiums collected for insurance. An effective supervision over companies that are themselves beyond the reach of the state laws is impossible except through supervision of the agents who represent such companies in the State. The public have no direct dealings with the companies. They must deal with the agents. The books and records of the companies, showing premiums collected from business done in this State, are kept at offices maintained in other states. The records which the agents are required to keep showing premiums collected are kept at offices maintained in this State which are accessible to the Insurance Commissioner.

The continuing growth of the insurance business done in this State resulted, in 1908, in the establishment of the insurance department. The need of more effective supervision and control over the agencies producing such business resulted, two years later, in the agency license requirement. (It is manifest that such requirement was not intended for revenue because the license fee of 50 cents is barely sufficient, if it is sufficient, to cover the cost of investigating the applicant and issuing the license.) The power to revoke the agent's license is coupled with its issuance. The agent, violating the laws of the State, or willfully deceiving or dealing unjustly with citizens of the State, is faced with the danger of being barred from engaging in the business of insurance in the State.

The consequences of decision in the present case—in its effect on the entire structure of insurance legislation, of which the agent's license requirement is the corner stone—is far more vital to the State than the collection of a penalty for an isolated instance of willful violation of the insurance laws. An insurance company, applying for a license to do

business in this State, is required by Section 4063 of the Code to satisfy the Commissioner by proper evidence "that its dealings are fair and equitable and that it conducts its business in a manner not contrary to the public interests." The holding of this Court that the company may transact its business of insurance through unlicensed agents, where it is known to the company not only that the agents are unlicensed but that they have been refused licenses, would amount to judicial sanction to the company to conduct its business in a manner that the Legislature has declared contrary to the public interests.

The position of the insurance company in this case is not greatly improved by the argument that the agent was a fit and proper person who was entitled to the license. The duty is placed on the Commissioner to determine, from the insurance standpoint provided in Section 4069, "that the agent is a fit and proper person" to conduct an insurance business "in a manner not contrary to the public interests." Section 4063. The Commissioner's so-called "bank agency ruling," under which he refused the license in question, seems based upon the premise that insurance agencies, operated in connection with banks, constitute an alliance of banking and insurance interests, susceptible both to unfair use of the bank's control over borrowers to require them to take policies through the insurance department of the bank, and also to the writing of policies, on property in which the bank is interested, for risks that a disinterested agent might not be willing to approve.

Whether the position of the Insurance Commissioner was right or wrong in his ruling is of comparative unimportance in the case. The matter is not before us. There can be no doubt that the question of issuing "bank agency" licenses was one which it was the duty of the Insurance Commissioner in the first instance to pass upon and decide. He could not evade this duty or obtain a construction from the Court before performing it. The ruling that he made, even

if wrong, was the departmental construction which, until it was reversed, could not lawfully be disregarded. The right to review the ruling existed. The statute providing this right contained the somewhat unusual provision for review by *certiorari* or mandamus which might be sought in the original jurisdiction of the Supreme Court. The defendant, without availing itself of this right, chose to stand on its assumption that the Insurance Commissioner was without authority, and that the company, regardless of the Commissioner's ruling, was entitled to do business through the agency whether it was licensed or unlicensed. Practice of this kind, if sanctioned or condoned, "makes every man his own law," with liberty to disregard and even defy constituted authority.

It is argued, however, in behalf of the insurance company, that the license fee of 50 cents was sent to the Commissioner, accompanying the application for a license, and that the fee was not returned. Even without any explanation to account for failure to return the fee sent, there seems no justification, either in the letter or spirit of the agent's license requirement, for making the failure to return this 50-cent fee equivalent to the exercise of the discretion vested in the Commissioner to issue the license. The requirement of Section 4069 is that, in addition to the license fee payable to the insurance department, the Insurance Commissioner, before issuing the license, shall *determine* that the agent is a fit and proper person. It would seem a most strained and unnatural construction to hold that keeping and failing to return the fee paid (whatever the cause) is sufficient to fulfill the statutory mandate prescribing the terms upon which the license may be issued. The statement of Mr. King, the Insurance Commissioner, affords moreover an explanation of the handling of the license fee which gives satisfactory answer concerning the failure to return the fee.

The testimony of Mr. King (offered in evidence, but stricken out by the trial Judge) speaks for itself without the need of further comment:

"Q. Mr. King, as to the matter of the $2.00 fees that is mentioned. * * *

"Q. Was any contention made by the Firemen's Insurance Agency or by Mr. Crawford for the return of this check or for the return of the 50-cent fee which was paid for H. C. Hicks? A. None whatever.

"Q. What is the practice of your office with reference to fees that are sent in to you for agency licenses, where those licenses were not issued? A. Quite often a company will send a list of names of fifty people and enclose their check for $25.00, and probably on the next mail we have a letter from them asking us not to license six of them. In which case, we acknowledge receipt of the $25.00 check, and if we have instructions from the company we cash the $25.00 check and send them $3.00, but if not, it is kept for credit to the company, which very often it will be three weeks later they will send in a request to license six agents and they mail application blanks stating that we have credit for $3.00. That is done every day.

"Q. Has that been done before by the Firemen's Insurance Company? A. Yes, sir.

"Q. That is a matter of practice in handling your department? A. Yes, sir.

"Q. Those payments were handled as credits? A. Yes, sir.

"Q. And returns were not made unless returns were requested? A. No, sir.

"Q. The check for $2.00 for these four licenses, as I understand, was not cashed at all? A. That is true.

"Q. The difference between the handling of the check for $40.50 and this check for $2.00 was due, Mr. King, to the fact that all four of these licenses were within the prohibited class? A. That is right.

"Q. And therefore, that check was not cashed? A. That is right."

The entire testimony offered by plaintiff to sustain the charges made in the complaint was held irrelevant and was stricken out in the objection made to such testimony by defendant's counsel. The testimony was offered as tending to show defendant's willful violation of the agency provision of Section 4090, and, for such purpose, the proposed testimony was clearly competent.

The correspondence offered in evidence shows: (a) That warning had been given by the Insurance Commissioner, who was Mr. King's predecessor in office, calling the attention of the Firemen's Insurance Company to the requirement that agents should not do business before being licensed; (b) that the insurance company understood the language of the statute to mean that agents had to be licensed by the Insurance Commissioner before they would be entitled to represent the company in such capacity; and (c) that Mr. Coleman, the countersigning agent on the policy in question, and his associates, the H. C. Hicks Agency, had been issued licenses through error and afterwards notified that such licenses should be returned. In the letter of March 10, 1928, containing such notice, the insurance company was also put on notice that, if the licenses issued to the members of the H. C. Hicks Agency were not surrendered, they would expire on March 31st and new licenses for the year beginning April 1, 1928, would not be issued.

The testimony of Mr. King, which was offered in evidence, shows that the business of the unlicensed H. C. Hicks Agency was carried on with the company's knowledge and authorization, even after the positive and final refusal of the Commissioner to issue the licenses requested for the agency. The insurance Commissioner's ruling was communicated to defendant's state agent in personal conference, and from the testimony now before us (it being, of course, understood that this Court should not undertake to anticipate other testimony that may be offered on another trial of the case), there could have been no possible basis of misunder-

standing the position of the Insurance Commissioner, and no possible reason for the company's assuming that the agency had no right to continue in business.

Evidentiary also of the attitude displayed by the insurance company in dealing with the entire situation is the testimony of Mr. King that, at the time the agency licenses were requested, it had not been brought to his attention that insurance was being written by the agency, nor was any mention of such fact made by Mr. Crawford during the course of the conference.

"Q. Did he make any reference to the writing of policies by that particular agency at the time that he asked for a license to be issued to the agency? A. None whatever, no, sir."

Similarly evidentiary to sustain the charge of willfulness against the defendant is the testimony that the Commissioner invited a review of his ruling in the mode prescribed by Section 4065 of the Code, and that the insurance company's state agent left the conference with the Commissioner, at which such invitation was extended, upon the understanding that the ruling made should stand until the test case had been decided. The statements of Neal Bassett, president of the insurance company, and W. D. Crawford, its state agent, as made at a hearing before the Insurance Commissioner on August 23, 1928, were also offered in evidence, for the purpose of showing that Mr. Crawford, as special agent, had communicated to the home office of the defendant, Firemen's Insurance Company, in regard to the Commissioner's refusal to license the H. C. Hicks Agency; and, further, that the defendant's home office was aware that the H. C. Hicks Agency continued to write insurace although no licenses had been issued for that agency. This testimony was also competent.

The agency continued to operate without the test case being brought, but this situation did not come to the notice of the Insurance Commissioner until weeks afterwards

when, upon the matter being brought to his attention, an investigation followed, revealing that 88 policies in all had been issued by the H. C. Hicks Agency during the period of its unlicensed operations.

The question of willfulness under such testimony was properly one for the determination of the jury.

MR. JUSTICE STABLER concurs.

MR. JUSTICE COTHRAN (dissenting) : The sole question in this appeal is whether the defendant, a foreign insurance company, is liable to the penalty provided in Section 4092, Vol. 3, Code 1922, for a violation of Section 4090. The State endeavors to sustain the alleged liability by showing that an agent of the company countersigned and issued a policy without having obtained a license as such agent required by Section 4069, two entirely separate and distinct propositions. Section 4090 prohibits a foreign insurance company from issuing a policy of fire insurance, upon any property located in this State, which has not been approved and countersigned "by an agent who is a resident of this State, regularly commissioned by the company doing business in this State."

Section 4092 provides for the imposition and enforcement of a penalty of $500.00 for the violation of Section 4090 (and other sections not pertinent to the present controversy).

It is not, and cannot successfully be, contended that the agent who issued the policy did not fully comply with the qualifications imposed by Section 4090; he was a resident of the City of Spartanburg in this State; was duly appointed and commissioned as an agent of the company, and countersigned and issued the policy.

It is contended that the agent was not at the time operating under a license issued by the State Insurance Commissioner, as required by Section 4069, and that because *he* was violating the law (which by the way provides no penalty), the company is liable for a penalty provided for a different infraction.

Section 4072 prohibits the issuance by insurance companies of policies otherwise than through duly authorized agents, which means of course agents duly authorized *by the company*.

Section 4086 provides a penalty upon insurance companies for the violation of any of the provisions of Chapter 48, *by them,* which manifests a purpose to punish them for *their acts* or omissions and not those of *their agents*.

It appears that this prosecution is the result of a controversy which flared up during the administration of the predecessor of the present Insurance Commissioner, between the defendant company and the insurance department; the latter having set its face against the issuance of licenses in connection with what is known as the "Bank Agency Ruling" issued by the Commissioner April 30, 1928. This was a rule which attempted to limit the operation of insurance agencies to individuals, except that the Commissioner reserved the right to alter this ruling where he concluded, for certain reasons, that the bank agency operations should be recognized. The agency at Spartanburg was connected with the Bank of Commerce of that city; A. R. Coleman was one of the employees of the bank and also of the agency. He, Hicks, and other employees of the bank were licensed by the previous Commissioner in February, 1928, under Section 4069. Later the Commissioner learned that these agents were connected with the bank agency, and attempted to have them return their licenses, which they refused to do; they expired by their terms on March 31, 1928.

The present Commissioner was elected and took office April 2, 1928. The defendant sent to the Commissioner a list of agents which it had commissioned in this State which included the name of H. C. Hicks. With the list was sent a check for $41.00 covering licenses for 82 agents at 50 cents each. Licenses were issued to all except Hicks; the check, however, was cashed and no refund made to the defendant on account of the license refused to Hicks and no

notice was sent by the Commissioner to the home office of the company from which such notice of commissions had come, that Hicks would not be licensed.

A contest then developed over the "Bank Agency Ruling" in the latter part of April and in May, 1928, the corporation involved in such contest being a bank in Columbia which had attempted to do business through one of its agents.

The defendant receiving no official notice from the Commissioner that the licenses would not be issued, and the "Bank Agency Ruling" still being under discussion and dispute, continued during this period to write policies through agents regularly commissioned by it and who had held licenses up to March 31st. The Commissioner admitted upon the trial of this case that these agents were fit and proper persons, and that his only reason for refusing to license them was his "Bank Agency Ruling."

This "Bank Agency Ruling" was taken to the Courts in the fall of 1928, in a case entitled *State ex rel. Vernon C. Earle v. Sam B. King, Insurance Commission,* which was a petition for mandamus to require the Commissioner to issue him a license. Earle's name was one of those included in the list of four names, which also included that of A. R. Coleman. The matter was heard before his Honor, Judge Mauldin, at Columbia, who filed an order granting the petition for writ of mandamus, holding that the "Bank Agency Ruling" was unconstitutional on several grounds. From this ruling there was no appeal.

In June, 1928, the Commissioner first gave formal notice to the defendant that these agents coming within his ruling would not be licensed. This action thereafter, in August, 1928, was commenced.

The identical question presented in this appeal came up before, and was decided by his Honor, Judge Cochran, of the United States District Court, in a suit brought by the defendant in this case, to enjoin the present Insurance Commissioner from a threatened revocation of its license for this

same alleged violation of law by the agents in not obtaining licenses from the Commissioner. Counsel for the Commissioner in the hearing before his Honor, Judge Cochran, made a motion to dismiss the complaint (of the same effect as a demurrer in the State Court). Judge Cochran filed an order, March 11, 1929, refusing the motion. While his ruling and reasoning are not conclusive upon this Court, it is so clear and convincing, and so fully meets with my approval, that I include it herein as a part of this opinion:

"My view is that under the bill of complaint there is presented for my decision the pure question of law whether the Insurance Commissioner has the authority by law to revoke a license which has been duly issued to a foreign insurence company, upon the ground that some of the agents of the company who have been duly authorized and commissioned by that company, have countersigned and issued policies when they were not in fact licensed to do business as agents by the Insurance Commissioner. That question is to be determined of course by the statute law of South Carolina, and there is no decision of the State Court upon the point.

"I have examined all the Sections of Article 1 of Chapter 48, and there is nothing in the bill of complaint or the proceeding before the Commissioner to show that the plaintiff has failed to comply with the terms of the Article, unless it be Section 4064. That Section, as has already been stated, provides that the Insurance Commissioner may revoke the license of an insurance company when he finds that it has failed to comply with the law. It is upon this that the Commissioner bases his ruling, namely, that the plaintiff has violated the law; that is, has failed to comply with it. The real question then is whether there is any duty resting upon an insurance company to obtain licenses for its agents, and whether it violates the law when one of its agents who is not duly licensed countersigns and issues a policy.

"It is clear that the statutes of South Carolina prescribe both that an insurance company must obtain a license and

that each agent must obtain a license. Section 4069 of the Code of 1922 provides that 'before doing business in this State for any insurance company or association, each agent shall procure from the Insurance Commissioner a license for which he shall pay one-half dollar as an annual department license fee.' It also provides that 'before issuing such license the Insurance Commissioner shall determine that the agent is a fit and proper person'; and he is given power to revoke the license after thirty days' notice and examination, 'whenever it shall appear that the agent has violated the law of this State, or has willfully deceived or dealt unjustly with a citizen of the State.'

"It is manifest from this Section that the duty of obtaining an agent's license rests not upon the company, but upon the agent. There is not a trace in any of the statutes upon the subject indicating that the Legislature intended to impose this duty upon the company; nor is there a trace of any intention that the license of the company to do business in the State might be revoked on the ground that an agent, who has not been licensed by the Commissioner, has issued policies; it may be that it would be good policy to require foreign insurance companies, when they commission agents and authorize them to do business, to see that they first obtain license before issuing policies. But that is a question of policy for the Legislature to decide; and the Legislature has not, so far, decided to impose that duty upon insurance companies, and certainly has not given the Commissioner any power to revoke a foreign company's license because of the failure of the agent to obtain his own license.

"It is true that it has been the custom of this particular company and other companies to forward the fees, together with a list of its agents, to the Insurance Commissioner, and request that licenses be issued to them. But this is merely a custom and is not directed by any law.

"The defendant's counsel rely also on Section 4090 of the Code of 1922 for South Carolina. But this Section clear-

ly has no application to the present case. It simply provides that 'no fire insurance company * * * not incorporated under the laws of this State * * * shall make * * * any policy of insurance * * * of any kind * * * except after said risk has been approved, in writing, by any agent who is a resident of this State, regularly commissioned by the company doing business in this State, who shall countersign all policies so issued and receive the commission therein when the premium is paid, and the State shall receive the license fees required by law to be paid on the premiums collected for insurance on all property located in this State.' There is absolutely nothing to show that this Section was not complied with. The agents whose acts have been questioned were duly commissioned by the company, and there is no showing or claim that they failed in any of the things required by this Section. The only failure that is claimed is that they failed to comply with Section 4069, which requires agents to obtain a license from the Commissioner. It seems to me that the learned counsel for the defendant have confused the commissioning of an agent with the licensing of an agent. The commission must be issued, not by the Insurance Commissioner, but by the company; and this was done. The agent's license must be issued of course by the Commissioner; and this was not done; so that the question remains, as stated at the outset, whether the failure of an agent to obtain his license gives the Commissioner power to revoke the license of the company itself."

Assuming, however, what appears to me to be an untenable position, that the insurance company may be penalized *for the failure of its agent* to properly qualify himself for soliciting and issuing policies, by obtaining a license from the Commissioner, an obligation which the statute imposes *upon the agent alone,* it strikes me as more untenable to declare that the company may be penalized for its alleged failure to require the agent to procure a license when it appears that it made application to the Commissioner for

the license, accompanied by the cash fees, and was refused solely upon the ground that to grant it would be in conflict with the so-called "Bank Agency Ruling" of the Commissioner, a position later repudiated by a State Circuit Judge and a Federal District Judge. The State officials appear to have had so little faith in their contention that in neither instance did they ask for a review of the decision by an appellate tribunal.

The State charges a willful violation of the statute Section 4090 by the insurance company, as it had to do under the terms of the statute. I do not think that there is the slightest evidence tending to sustain this charge. The propriety of the "Bank Agency Ruling" was under constant discussion; the only solution of it judicially, was against the Commissioner's position; the circumstances negative any disposition on the part of the company arrogantly to fly into the face of the law: (a) The representatives of 'the Hicks Agency in Spartanburg had been approved as fit and proper persons and licensed by John J. McMahan, as Insurance Commissioner, up to March 31, 1928; (b) that such agents were duly commissioned by the Firemen's Insurance Company for the year 1928, and notice of such fact given to the Insurance Commissioner; (c) that applications for license for such agents were filed in due time with the proper fees enclosed; (d) that the only reason they were not licensed by Sam B. King, as Insurance Commissioner, was on account of his "Bank Agency Ruling"; (e) that the checks sent with such licenses were either cashed without refund to the company or retained uncashed; (f) that no notice of the refusal to license these agents was sent to the home office of the Firemen's Insurance Company, from which the applications had come, until after the policy in this suit was written; (g) that the "Bank Agency Ruling" was not issued until April 30, 1928, and by its terms the Commissioner reserved a wide discretion as to what bank agencies he would license.

For these reasons I think that the order of his Honor, Judge Whaley, sustaining the motion of the defendant for nonsuit, should be affirmed.