BRUNSON v. BANKERS' NATIONAL LIFE INSURANCE CO.

(138 S. E., 522)

INSURANCE—FAILURE OF ONE CONTRACTING TO WORK FOR INSURANCE COMPANY TO PROCURE LICENSE DID NOT PRECLUDE ACTION FOR BREACH OF SUCH CONTRACT (CIV. CODE 1922, § 4069).—Failure of person contracting with authorized representative of insurance company to work as insurance agent, to procure license required by Civ. Code 1922, § 4069, *held* not to preclude his bringing action for breach of such contract, particularly in view of fact that insurer had agreed to procure such license and that question of license did not enter into discharge.

Before TOWNSEND, J., Sumter, Fall Term, 1925. Reversed.

Action by De Witt Brunson against the Bankers' National Life Insurance Company. Judgment of non-suit, and plaintiff appeals. Reversed and remanded for a new trial.

The complaint, amended answer and exceptions, directed to be reported, are as follows:

The material allegations of the complaint were as follows:

"The plaintiff above named complaining of the defendant herein, alleges:

"(1) That the defendant is a life insurance company, organized and existing under the laws of the State of South Carolina, and doing business as such in the County of Sumter, said State.

"(2) That on or about the 1st day of February, 1924, the defendant employed plaintiff as its collecting and soliciting agent at a salary of $20 per week, in addition to which defendant agreed to pay plaintiff 15 per cent. of the collection made by plaintiff as such agent. That theretofore one R. P. Gainley had been agent for said company, and had built up a large clientele for said company, which was to be, and was, turned over to plaintiff, and which constituted

an immediate and sure source of income both to defendant and plaintiff.

"(3) That the said employment was to continue for the space of one year from the 1st day of February, 1924.

"(4) That the defendant accepted such employment, and commenced the discharge of the duties thereof, and agreed to carry out the terms of the said contract and to act as the said collecting and soliciting agent of the defendant.

"(5) That about two weeks thereafter, without cause or previous notice to this plaintiff, defendant refused to permit plaintiff to perform said contract on his part, and refused to pay plaintiff for the two weeks during which he had performed the same, and refused to continue plaintiff in said employ, although plaintiff was at said times ready, anxious, and willing to continue the same.

"(6) That immediately prior to accepting the said employment plaintiff had an opportunity of accepting a position that would pay him $1,800 per year, which was well known to the defendant, and that the plaintiff forwent the said opportunity and took the employment aforementioned, upon representation and promise of the defendant that the same would pay him at least $1,800 per year, and in all probability a great deal more.

"(7) That the acts of the said defendant in refusing to permit plaintiff to carry on the said contract, and in breaking said contract on its part have damaged plaintiff in the sum of $1,000."

The material allegations of the amended answer were as follows:

"For a first defense:

"I. Admits the allegations contained in paragraph 1 thereof.

"II. That the complaint herein being so utterly vague, indefinite, and uncertain as to the allegations contained in paragraphs 2, 3, 4, 5, 6, and 7, and being utterly without

particularity therein, the defendant cannot answer the charges contained in said paragraphs with certainty and intelligence, and is therefore compelled to deny the same.

"For a second defense:

"I. That, on information and belief, plaintiff has been regularly and continuously employed since the date of the alleged contract with defendant, and remunerated therefor, and, if plaintiff has been damaged, which defendant denies, the remuneration received during said period should be credited against same.

"For a third defense:

"I. This defendant further alleges, on information and belief, that, even though a contract was made between the plaintiff and defendant as alleged in the complaint, which defendant denies, plaintiff never qualified himself to legally perform the duties imposed upon him by said contract, and consequently could not legally enter upon the discharge thereof, for the reason that he never applied for nor received from the insurance commissioner of South Carolina a license to act as an insurance agent for said defendant company, as required by the laws of this State.

"Wherefore defendant prays that the complaint be dismissed, with costs.

### EXCEPTIONS

"(1) His Honor, the trial Judge, erred, it is respectfully submitted, in granting a nonsuit, for the reason that plaintiff had not procured a license as an insurance agent; said error being that the plaintiff as a new employee of the defendant company was entitled to a reasonable time within which to procure his license, which time had not expired when plaintiff was discharged.

"(2) His Honor, the trial Judge, erred, it is respectfully submitted, in granting an order of nonsuit, for the reason that plaintiff was unlicensed; said error being that plaintiff was justified in waiting upon the defendant company to

procure for him an application blank, in view of the agreement of the said company to do so, and the question of whether or not a reasonable time had elapsed after such agreement for plaintiff to procure a license should have been submitted to the jury.

"(3) His Honor, the trial Judge, erred, it is respectfully submitted, in granting an order of nonsuit upon the ground that plaintiff was unlicensed; said error being that the contract made between plaintiff and the defendant company was not an unlawful contract of acting as an insurance agent without a license, but a lawful contract to act as an insurance agent with a license, and plaintiff was entitled to a reasonable time within which to qualify himself as such agent, especially in view of the agreement of the defendant company to procure the license for him, and, in so far as the contract was executory, plaintiff was entitled to damages for its breach, and his Honor should have submitted to the jury the question of reasonable time and amount of damages.

"(4) His Honor, the trial Judge, erred, it is respectfully submitted, in ordering a nonsuit upon the ground that plaintiff had no license; said error being, under the terms of employment, it was the duty of the defendant to furnish the blank application for license, and the defendant, having failed to do so, and not having allowed plaintiff a reasonable time to do so himself, could not take advantage of plaintiff's failure to procure a license."

*Messrs. Harby, Nash & Hodges,* for appellant, cite: *All insurance agents required to be licensed:* Sec. 4069, Code, 1922. *Same, for protection of public:* 104 S. C., 217. *Contract by company with unlicensed party not void; license merely essential when services performed:* 83 Pac., 282; 28 Ill. App., 72; 152 Ill. App., 452. *License may be procured prior to performance, within time fixed by contract, or within a reasonable time:* 98 S. C., 8; 89 S. C., 328.

*Messrs. Epps & Levy,* and *Salley & Salley,* for respondent, cite: *Insurance agent required to have license before doing business in this State:* Sec. 4069, Code 1922. *Contract to do act prohibited by law is void:* 430. *Statute be waived:* 129 S. E., 203.

June 14, 1927.

The opinion of the Court was delivered by Mr. Justice Carter.

This action, by the plaintiff, De Witt Brunson, against the defendant, Bankers' National Life Insurance Company, was commenced October, 1924, alleging damages for an alleged breach of contract. The case was tried before his Honor, W. H. Townsend, and a jury, at the fall term, 1925, Court of Common Pleas for Sumter County, and resulted in an order of nonsuit. From this order of nonsuit, the plaintiff has appealed to this Court, alleging error in the particulars set forth under exceptions, which will be reported, together with the complaint and amended answer.

The Circuit Judge issued an order of nonsuit giving as his reasons therefor that the plaintiff, not having procured a license to act as an insurance agent for the defendant, the plaintiff was not in a position to contend that there was a valid contract of employment with the defendant insurance company, and that, therefore, no cause of action *ex contractu* could arise.

Under the view this Court takes of the case, the only question germane to the appeal is, Is the procurement of a license to work as an agent for an insurance company a prerequisite to entering into a contract with such insurance company to work as such agent? So much of the testimony as is pertinent to this question tends to show the following statement of facts: In the early part of 1924, the plaintiff entered into a contract with the defendant at Sumter, S. C., through its duly authorized representative,

to work. for the defendant as an insurance agent; the plaintiff's work to consist of writing insurance and collecting a debit that was formerly handled by a Mr. Gainley, who had died—the defendant being engaged in the business of writing industrial insurance, and the debit is the amount of weekly premiums collected on a certain route from a list of policy holders in the company. Mr. Hopkins, the representative of the insurance company at the time the contract was made, represented to the plaintiff that it was a good position, and the parties contracted on the terms agreed upon as follows: The plaintiff was to work for the defendant, performing the work above stated, at the sum of $20 a week and 15 per cent. of the debit. At the time this contract was made, the plaintiff had a position offered him in the post office which would have paid him about $1,800 per year, and he took the position with the insurance company, defendant herein, in preference to that position, on the recommendation of Mr. Hopkins, the duly authorized representative of the defendant insurance company; the said representative of the insurance company having stated to the plaintiff that the position with the insurance company was a better position, and that there was a greater opportunity for promotion, it being agreed between the parties at the time that the plaintiff would work for a year at least, and, if the plaintiff made good, he would have a promotion. In the plaintiff's testimony, he stated:

"I accepted the job and started to work the next day after Mr. Hopkins hired me.

"I went out on the debit with Mr. Hopkins, who wanted to show me where to collect the money and to break me in on the debit. I worked for about two weeks, when Mr. Hopkins died. After his death, I continued to report at the company's office until a gentleman by the name of Thornley came down and discharged me. He told me that he had brought a man over to take the job that morning; that I

was an inexperienced man and he could not keep me at that salary. The matter of my license as an insurance agent was mentioned between Mr. Hopkins and myself. We were coming up from Gable, and he told me he would have to have the license issued to me and I would have to pay for it. I told him, 'All right, go ahead and have it issued.' He did not ask me for the money. I suppose he was to get it when he got the license. He told me I would have to have a license and he would get it for me, and I told him to go ahead and get it. He never got the license. The matter of license was not mentioned by Mr. Thornley when he came here. I could have applied for the license if I had not expected Mr. Hopkins to get it. I did not apply for it because the man who hired me told me he would get the license for me.

"He engaged me two weeks before his death, and during the time I worked for him I had no license. During this time he was breaking me in. It was on Thursday of the second week that I worked for him that he told me that he would get the license for me. He died the following Monday. I relied upon Mr. Hopkins to procure the license. Mr. Thornley discharged me two or three days after Mr. Hopkins' death, and I could have applied for a license if Thornley had not discharged me."

The witness White, in his testimony, makes this statement: "An agent has to have a new license for each company he represents." This statement of the witness White seems to be in accordance with the provisions of the statute governing the issuing of licenses to agents. Section 4069, Vol. 3, of the Code of 1922, reads as follows:

"Before doing business in this State for any insurance company or association, each agent shall procure from the insurance commissioner a license for which he shall pay one-half dollar as an annual department license fee. Before issuing such license the insurance commissioner shall de-

termine that the agent is a fit and proper person. Such license shall expire on March 31 of each year. * * * "

In the case of *Ballentine v. Covington,* 109 S. C., 217; 96 S. E., 92, this Court held that contracts of insurance by unlicensed persons are void. Clearly, this Section 4069 forbids the doing of business by an unlicensed person, but it does not follow that a person may not lawfully contract with an insurance company to do business before securing his license. On the other hand, this Court is of the opinion that a person may enter into a valid contract with an insurance company of the nature of the contract alleged in this case before procuring a license. A separate license is to be procured for each company that a person works for, and a person must necessarily be expected to have a contract with an insurance company before procuring a license to work for such company. A person would not be expected to procure a license to work for a company, not knowing whether he would work for the company or not. Furthermore, the testimony quoted above tends to show that the defendant agreed to procure a license for the plaintiff and that the plaintiff relied upon this agreement; otherwise he would have procured the license. It further appears that the question of license did not enter into the discharge of the plaintiff.

It is the opinion of this Court that his Honor, the Circuit Judge, erred in granting the order of nonsuit, and it is the judgment of this Court that the judgment of the Circuit Court be and is hereby reversed, and the case remanded for a new trial.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, BLEASE and STABLER concur.