17889

W. A. FULLER, Respondent, v. EASTERN FIRE & CASUALTY INSURANCE COMPANY and Donald Eugene Gillespie, Defendants, of whom Eastern Fire & Casualty Insurance Company is, Appellant.

(124 S. E. (2d) 602)

*Messrs. Cooper & Gary* and *William A. Dallis,* of Colum-
bia, and *Leatherwood, Walker, Todd & Mann* and *Wesley
M. Walker,* of Greenville, *for Appellant,*

*Messrs. Thomas A. Wofford* and *Theodore A. Snyder, Jr.,* of Greenville, *for Respondent,*

March 15, 1962.

Moss, Justice.

W. A. Fuller instituted this action against Eastern Fire & Casualty Insurance Company, the appellant herein, and

Donald Eugene Gillespie, seeking damages for the breach of a contract of automobile liability insurance issued by the appellant to the respondent. The Court below sustained a demurrer interposed by the defendant, Donald Eugene Gillespie, and he was thereby eliminated as a party to this action.

The complaint alleges that Donald Eugene Gillespie was a salesman of automobile liability insurance and that on May 1, 1959, the respondent and the said Gillespie agreed on all material terms of a liability insurance policy, including the limitations of liability, various types of coverage, the description of the automobile to be insured, the premium to be paid for said insurance, and the term during which the policy was to be in force was from May 1, 1959 to May 1, 1960. It is further alleged that Gillespie agreed to procure for the respondent an automobile liability insurance policy on such agreed terms and that the respondent signed an application therefor embodying the terms relative to such policy and paid to the said Gillespie the sum of $25.00 by way of down payment to be applied to the agreed insurance premium of $83.00. The complaint further alleges that Gillespie told the respondent that he was covered with insurance from that day forward, and that the said respondent could then begin driving his automobile because he had insurance. It is further alleged that based on the representations of Gillespie, the respondent proceeded to operate his automobile, confident that he was covered by insurance, and that on May 2, 1959, while driving said car, was involved in a collision with an automobile driven by one Hudson; that subsequently Hudson instituted an action for damages against the respondent and attached his insured automobile. It is then alleged that the respondent made demand upon the appellant and Gillespie to defend the said action under the terms of the insurance policy heretofore referred to. The appellant refused to defend. The complaint alleges that the respondent, by reason of the failure of the appellant to defend the aforesaid action, employed attorneys to defend said suit in his behalf, .and

that on August 7, 1959, a judgment was awarded against him for the sum of $858.90, and costs; that the respondent's automobile was sold to satisfy said judgment and a deficiency judgment resulted which is still owed by the respondent.

The complaint alleges that on May 8, 1959, there was issued and delivered to him an automobile liability insurance policy by the appellant; that the policy so issued was in all respects that which he had bargained for with Gillespie, except that the said policy had an effective date between May 5, 1959 and May 5, 1960, rather than an effective date of May 1, 1959 to May 1, 1960, as had been contracted for with Gillespie. It is then alleged that the policy should have been effective between the dates contracted for; that the appellant was obligated to provide the respondent with coverage from May 1, 1959, and the oral promise of Gillespie was binding on the appellant; and that pursuant to said oral promise and representations, the respondent was protected by said policy from May 1, 1959, even though the policy, as issued had a commencing date of May 5, 1959. The complaint then alleges that Gillespie was an authorized agent of the appellant in procuring insurance for the respondent; that he collected the premium therefor and forwarded the same to the appellant; that he delivered the policy for it to the respondent; and that since Gillespie was an agent of the appellant it was bound by the promises of said agent to provide him with automobile liability insurance protection from May 1, 1959. It is then alleged that the appellant intentionally and fraudulently refused to defend the aforementioned lawsuit brought against the respondent and that he was entitled to be defended by the appellant and held harmless within the limitations of the policy. It is then alleged as a direct consequence of the appellant's intentional and fraudulent refusal to defend said action in breach of the said contract of insurance, the respondent has been damaged in the sum of $1,119.15, plus $5.00 for each day he was deprived of his automobile, commencing on July 10, 1959, and $10,000.00 punitive damages.

The appellant, by way of answer, in addition to a general denial, alleged that Donald Eugene Gillespie was not its duly authorized and licensed agent and had no authority to bind it by his actions on May 1, 1959. It is alleged that an application was received by Universal Underwriters, Inc., in Columbia, South Carolina, from Donald Eugene Gillespie, requesting the issuance of a liability insurance policy to the respondent; that the principal owner of Universal Underwriters, Inc. was Nelson M. Dangel, a duly authorized and licensed agent of the appellant; that upon receipt of said application, the said Dangel issued to the respondent a policy of the appellant, with effective dates of said policy for one year commencing May 5, 1959 and ending May 5, 1960. It is then alleged that the policy issued by the appellant was not in eeffct on May 2, 1959, and the appellant owed no duty to the respondent to defend any action instituted against him for any collision, or to pay any sums recovered against the respondent arising out of an automobile collision on said date.

This case came on for trial before the Honorable Steve C. Griffith, Presiding Judge, and a jury, at the 1961 January term of the Court of Common Pleas for Greenville County, South Carolina. During the trial, the respondent, over objection of the appellant, was permitted to testify as to conversations which he had with the said Gillespie. At the close of the testimony in behalf of the respondent, a motion was made by the appellant to strike all of the testimony as it relates to any promises or agreements arrived at between the respondent and Gillespie, on the ground that the said Gillespie was not an agent for the appellant on May 1, 1959, and by reason of such fact any promises or statements that he made would not be binding on the appellant. There was a motion made by the appellant for a nonsuit on the following grounds : (1) That the respondent failed to prove that Gillespie was an agent of the appellant at the time he made application to Gillespie for the insurance here involved; (2) That the respondent failed to prove that Gillespie had au-

thority to bind the appellant; (3) That the attempt on the part of Gillespie to bind the appellant was ineffectual since it appears from the evidence that Gillespie made only an oral binder without designating the company which would issue a policy of liability insurance; and (4) That the respondent failed to prove there was coverage under the policy of liability insurance issued by the appellant for the accident which occurred on May 2, 1959, for the reason that such occurred before the effective date of the policy, which was May 5, 1959, and hence there was no duty upon the appellant to defend said action nor pay any judgment recovered therein against the respondent. The appellant also moved for a nonsuit as to the claim for punitive damages on the ground that there was no evidence of any act of fraud on the part of the appellant, which accompanied the alleged breach of the insurance contract. These motions were refused. At the close of all the testimony, a motion for direction of a verdict was made on behalf of the appellant on the same grounds as was the motion for a nonsuit. The trial Judge granted the motion for direction of a verdict as to punitive damages for fraudulent breach of the contract, but otherwise denied the motions of the appellant and submitted the case to the jury, which rendered a verdict for the respondent in the amount of $1,864.15, which amount was divided under the instructions of the court to $1,119.15 actual damages, $145.00 for loss of the use of the automobile, and $600.00 for attorney fees. Timely motions for judgment *non obstante veredicto,* or in the alternative for a new trial, or a new trial *nisi,* were made. The trial Judge denied all motions, with the exception of the motion for a new trial *nisi,* and he directed that a new trial be granted unless the respondent remit upon the record all of the verdict in excess of $1,264.15. The respondent complied with the *nisi* order. The appellant, preserving by its exceptions, the questions heretofore stated, and also the question of damages that could be awarded in this case, has duly appealed to this Court.

It is admitted that Donald Eugene Gillespie had previously been an agent for the appellant, but his license, as such, expired on March 31, 1959. Hence, he was not a licensed agent of the appellant on May 1, 1959, at the time he solicited and took an application from the respondent for the insurance here involved. Section 37-231 of the 1952 Code of Laws of South Carolina, provides that no person shall act as an agent for any insurance company unless a license so to do has been issued to him by the Insurance Commissioner. However, a policy of insurance is not rendered void nor is the insured precluded from recovery upon such policy by reason of the fact that the person soliciting or issuing it was not duly licensed. This result has followed where such person was originally licensed but failed to keep his certificate renewed. Appleman On Insurance Law and Practice, Vol. 16, Section 8635, page 9. In the case of *Slater v. General Casualty Company of America,* 344 Pa. 410, 25 A. (2d) 697, it was held that where an automobile liability policy was written by insurer's general agent, the fact that the solicitor of said insurance was unlicensed at the time of obtaining the application for the insurance and collecting the premium therefor, did not relieve the insurer of liability on the policy. *Cf. Brunson v. Bankers' National Life Insurance Co.,* 140 S. C. 31, 138 S. E. 522.

In the case of *Taylor v. United States Casualty Co.,* 229 S. C. 230, 92 S. E. (2d) 647, it was held that agency may be created by law as well as by the real act of the principal, and that, with respect to third parties who deal with one as an agent of another, the relation of the principal and agent may arise because of estoppel of the principal to deny an apparent agency relied upon by such third persons.

Section 37-233 of the 1952 Code defines an agent of an insurance company as any person who solicits insurance in its behalf, takes or transmits, other than for himself, any application for insurance or any policy of insurance to or from such company, advertises or gives notice that he will receive or transmit any such application or policy, shall re-

ceive or deliver a policy of insurance of any such company, or shall receive, collect or transmit any premium of insurance, or shall do or perform any other act or thing in the making or consummating of any contract of insurance for or with such company.

It is true that agency may not be established solely by the declarations and conduct of the alleged agent, but such declarations and conduct are admissible as circumstances in connection with other evidence tending to establish the agency. *Drayton v. Industrial Life & Health Insurance Co.,* 205 S. C. 98, 31 S. E. (2d) 148. *Mebane v. Taylor,* 164 S. C. 87, 162 S. E. 65.

The evidence in this case shows that Gillespie contacted the respondent on May 1, 1959, and solicited and obtained from him an application for a policy of automobile liability insurance. The application was addressed to Universal Underwriters, Inc., Columbia, South Carolina, admitted by appellant to be its duly authorized and licensed agent. The terms of the policy were agreed upon, including the premium therefor in the amount of $83.00, with a down payment of $25.00, the remaining premium to be paid in five equal installments of $14.00 each. The requested policy period was from "May 1, 1959 to May 1, 1960." This application was signed by the respondent and by "Gene Gillespie", designating himself as "Agent submitting."

Gillespie testified at the time he took the application from the respondent he advised him that "he was insured as of that time." This is undisputed in the record. After Gillespie had received the application and the $25.00 premium he went to the South Carolina National Bank and got a bank money order made out to Universal Underwriters, Inc. for the premium so collected, less the agent's commission. He mailed such bank money order and the application to Universal Underwriters, Inc. in Columbia, South Carolina, and such bank money order and application were received by Universal Underwriters, Inc. on May 5, 1959. On the same date,

a policy of liability insurance was issued by the appellant upon the automobile of the respondent and said policy, in all respects, conformed to the application except the policy period was stated to be "May 5, 1959 to May 5, 1960." The policy so issued by the appellant was mailed to Gillespie for delivery to the respondent, and it was so delivered. Endorsed on the policy was a notation that "Gene Gillespie, 207 Brookside Avenue, Greenville, S. C.", along with Universal Underwriters, Inc. were the agents of the appellant. It further appears that by letter, dated May 5, 1959, the respondent was directed to make payments of the contract balance of premium to Universal Premium Association at Post Office Box 942, Columbia, South Carolina, this being the same Post Office address as that of Universal Underwriters, Inc. In this letter it was stated: "We appreciate the opportunity to be of service and suggest that if you have need of other insurance, you contact the agent who sold you this policy." There was a postscript to this letter, which read: "Since Mr. Gillespie did not have one of our contracts for you to sign, we are enclosing one and ask that it be signed where checked and returned in the enclosed envelope." It further appears that the appellant did, on May 7, 1959, make application to the Insurance Commissioner of South Carolina for a renewal of the agent's license for Gillespie. However, the appellant later on withdrew this request. Gillespie also testified that after he had received the policy in question, that the appellant sent him a supply of application blanks and rate sheets.

The initial part of the premium for the policy in question, after deduction of Gillespie's commission, was, on May 1, 1959, converted into a bank money order. The application received by Universal Underwriters, Inc. showed on its face that the policy desired and applied for was to take effect on May 1, 1959. We think these facts made it a question for the jury to determine whether the appellant was put on notice that Gillespie had agreed upon a policy with a coverage commencing on May 1, 1959.

As is heretofore stated, the respondent had an automobile collision with one Hudson on May 2, 1959, and he promptly

notified Gillespie of the collision. Gillespie testified that after he got such information he notified the appellant and Universal Underwriters, Inc. of such fact on Thursday, or possibly Wednesday, after he had received and delivered the policy in question to the respondent. It is reasonable to conclude that the respondent was attempting to comply with the provision of the requirement of the insurance policy that when an accident occurs, notice shall be given by the insured to the company, or its authorized agent. If the respondent was not insured by the policy, there was no necessity for the giving of such notice, nor was there any reason for Gillespie to transmit such notice to the appellant. The evidence shows that the appellant accepted premium installments as they became due after notice of the fact that the respondent had had a collision. The appellant, with this knowledge, kept the policy in force until August 4, 1959, at which time the said policy was canceled. The appellant did not repudiate the contract of insurance but returned only the unearned premium, retaining the portion of the premium claimed by it to have been earned.

It is the contention of the appellant that Gillespie was not its authorized agent and had no authority to bind it by making any agreement with the respondent fixing the time for the commencement of the contract of liability insurance. The trial Judge submitted to the jury, as a question of fact, whether the appellant had ratified and was bound by the agreement made by Gillespie with the respondent, even though the said Gillespie was acting without proper authority.

In 44 C. J. S., Insurance, § 273, page 1088, it is said:

"An insurance company, like other principles, may ratify and thereby become bound by a contract of insurance entered into on its behalf by one who at the time was acting without proper authority, provided the contract is not one which is void *ab initio*. After ratifying, the company must bear all the burdens of the contract; it becomes bound by representations

made by the agent in the course of the transaction, and is chargeable with any fraud or mistake of the agent in making the contract; further, the company is bound by its ratification, with knowledge of the facts, of the unauthorized acts of an agent, or person assuming to be an agent, in soliciting and receiving an application, fixing the time for the commencement of the contract, delivering a policy, waiving a condition as to the delivery of the policy, or accepting a promissory note for the first premium."

Ratification as it relates to the law of agency may be defined as the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who at the time assumed to act as his agent. Whether or not there has been a ratification of an unauthorized act by acceptance or retention of benefits thereof is usually a question of fact for the jury and not one of law for the court. *Barber v. Carolina Auto Sales,* 236 S. C. 594, 115 S. E. (2d) 291.

Assuming that Gillespie was an unlicensed and unauthorized agent of the appellant to solicit or take an application from the respondent, we think the subsequent conduct of the appellant, under the evidence heretofore recited, was sufficient to take to the jury the issue of whether or not the appellant expressly or impliedly ratified the acts of the said Gillespie. In *Greene et al. v. Spivey et al.,* 236 N. C. 435, 73 S. E. (2d) 488, it was held that ordinarily an insurance company may not ratify that part of an unauthorized contract made by an agent which is favorable to the company and reject the rest, but the company must ratify or reject as a whole, and the ratification will extend to the entire transaction.

The appellant asserts that the oral binder made by Gillespie with the respondent was ineffective against the appellant for the reason that it was not designated as the insurance company to which the application of the respondent was directed. The appellant asserts that the fail-

ure to designate any company is fatal to the validity of the oral binder. We have held that the failure to designate any company is fatal to the validity of an oral binder, *Dubuque Fire & Marine Ins. Co. of Dubuque v. Miller et al.* 219 S. C. 17, 64 S. E. (2d) 8; but where no specific insurance company is designated by the parties, the omission is fully taken care of and the identity of the insurance company ascertained, when the policy is actually issued, as was done in this case. *Aiken Petroleum Co. v. National Petroleum Underwriters, etc.,* 207 S. C. 236, 36 S. E. (2d) 380.

We think there was no error on the part of the trial Judge in refusing the motion of the appellant to strike the testimony relating to the promises or agreements arrived at between the respondent and Gillespie. Such declarations, promises or agreements alone would not have been admissible to establish agency, but such were admissible in connection with the other evidence tending to establish agency. We, likewise, think that the trial Judge was correct in refusing the motions of the appellant for a nonsuit, directed verdict, judgment *non obstante veredicto,* or in the alternative for a new trial, on the four grounds heretofore set forth. We shall herein discuss the exceptions relating to the amount of the verdict. We think there was no error in the charge of the trial Judge on the question of ratification or waiver; there was evidence to support a verdict on either theory.

The final question for determination is whether the trial Judge committed error in his instructions to the jury on the question of damages and whether his order granting a new trial *nisi,* resulting in a reduction of the verdict as found by the jury, correctly disposed of the issue of damages.

In considering this last question, we do so on the basis that a valid contract of liability insurance existed between the appellant and the respondent, as was found by the jury.

The respondent alleged in paragraph 11 of his complaint that as a consequence of the appellant's breach of its contract

of insurance with him, he has been damaged in the sum of $1,119.15, plus $5.00 for each day he has been deprived of the use of his automobile, commencing on July 10, 1959, as actual damages. The respondent alleged in paragraph 7 of his complaint that he had been put to great expense for attorneys' fees because of the failure of the appellant to defend the action brought against him by one Hudson.

The trial Judge instructed the jury if it concluded that the respondent was entitled to recover against the appellant for a breach of the insurance contract, he would be entitled to recover the fair value of his automobile, which he lost by attachment and sale to satisfy the judgment of Hudson against him. The jury was further charged that if the respondent was entitled to recover, he would be entitled to the reasonable rental value of an automobile for the period that he was deprived of the use of the insured automobile because the same was attached. He further charged that the respondent would be entitled to recover reasonable compensation for his attorneys in defending the Hudson suit. In instructing the jury as to the form of the verdict, in the event they found for the respondent, they were directed to divide the damages so found. The jury, in accordance with the form of verdict submitted to them found for the respondent $1,119.15 actual damages, $145.00 for the loss of the use of respondent's automobile, and $600.00 as attorney's fees, making a total verdict of $1,864.15. This verdict was by order granting a new trial *nisi* reduced to $1,264.15. In other words, the verdict was reduced by the amount found as attorneys' fees, and in the order *nisi* the trial Judge held that the respondent was limited, in his recovery of damages, to the amounts claimed in paragraph 11 of the complaint, to which we have heretofore referred. The right to recover attorneys' fees was not alleged in paragraph 11 of the complaint. The trial Judge stated in his charge to the jury "There is no evidence in this case as to the amount of the attorneys' fees", nor was such alleged as an element of respondent's damage. The appellant charges

the trial Judge with error in instructing the jury that they could assess and award an amount for attorneys' fees when there was no evidence as to the value of the services rendered by the attorneys for the respondent. It becomes unnecessary for us to pass upon this exception for the reason that the trial Judge has, by his order *nisi,* relieved the appellant from the payment of any attorneys' fees.

The appellant charges the trial Judge with error in instructing the jury that they could find damages in the amount of the fair market value of the automobile of the respondent.

This being an action for the breach of contract, the burden was upon the respondent to prove the contract, its breach, and the damages caused by such breach. *Baughman v. Southern Railway Co.,* 127 S. C. 493, 121 S. E. 356. The general rule is that for a breach of contract the defendant is liable for whatever damages follow as a natural consequence and a proximate result of such breach. *National Tire & Rubber Co. v. Hoover,* 128 S. C. 344, 122 S. E. 858; and *Smyth v. Fleischmann,* 214 S. C. 263, 52 S. E. (2d) 199. Where an insurer refuses to undertake the defense of an action against the insured based upon a claim within the coverage of the insurance policy, it thereby breaches the contract of insurance and is liable to the insured for all damages resulting to such insured as a direct result of such refusal and breach. *Liberty Mutual Ins. Co. v. Atlantic Coast Line Ry. Co.,* 66 Ga. App. 826, 19 S. E. (2d) 377. *Butler Bros. v. American Fidelity Co.,* 120 Minn. 157, 139 N. W. 355, 44 L. R. A., N. S., 609.

It is undisputed that the Chevrolet automobile of the respondent, which was insured by the appellant, was attached and sold to satisfy the judgment which Hudson had obtained against him. The respondent testified that this automobile was worth $1,100.00.

In the case of *Pennsylvania Threshermen & F. Mut. Cas. Ins. Co. v. Messenger,* 181 Md. 295, 29 A. (2d) 653, the insurance company wrongfully refused to

defend an action brought against its insured. A judgment was obtained against the insured and his truck and trailer were sold at a Sheriff's sale to satisfy such judgment. The insured then brought an action against the insurance company for damages for the loss of his truck and trailer. The Court held that the insurer was liable for such damages because it breached the insurance contract in failing to defend the insured, and the measure of damages for said breach are those which follow as a natural consequence and a proximate result thereof. It was further held where the insurer refuses to perform the obligation required by the liability insurance contract of defending a suit in behalf of the insured or paying a judgment against him, in consequence of which the insured suffers loss, the Court can compel the insurer to respond in damages therefor.

We think that since there was a breach of the insurance contract by the appellant, it was liable for whatever damages followed as a natural consequence and as a proximate result of such breach, and this included the fair market value of the automobile which the respondent lost because of the failure of the appellant to perform its obligation under the automobile liability insurance policy. It follows that the trial Judge committed no error in his charge to the jury in this respect.

Where an insurer wrongfully refuses to defend an action against the insured on the ground that the claim upon which the action was based, was not within the coverage of the policy, it is liable for the court costs taxed or incurred in such suit. *Carolina Veneer & Lumber Co. v. American Mut. Liability Ins. Co.*, 202 S. C. 103, 24 S. E. (2d) 153. The judgment rendered against the respondent in the action against him by Hudson showed taxed costs of $10.25. The appellant is liable for such taxed costs.

The appellant charges that it was error for the court to instruct the jury that it could find a verdict for the respond-

ent for loss of the use of his automobile. The jury was instructed that if the respondent lost the use of his automobile for any period of time, he would be entitled to the reasonable rental value of an automobile for the period of time that he was deprived of the use of his automobile. The appellant asserts that there was no testimony presented by the respondent as to the reasonable rental value.

In the case of *Coleman v. Levkoff*, 128 S. C. 487, 122 S. E. 875, this Court held that the question of the value of the use of property, of which the owner was deprived, the expense of hiring a substitute for that of which he was deprived, is a pertinent consideration. In the case of *Newman v. Brown et al.*, 228 S. C. 472, 90 S. E. (2d) 649, 55 A. L. R. (2d) 929, this Court approved a charge that a jury could award a reasonable sum of money to compensate the owner of an automobile for the loss of use of such automobile for a reasonable length of time during which it was being repaired. In the case of *Scott v. Southern Ry. Co.*, 231 S. C. 28, 97 S. E. (2d) 73, a recovery was allowed for the loss of use of an automobile where there was testimony that the rental value of a substitute car was $5.00 per day.

As to damages in this respect, the sole testimony thereabout was given by the respondent, as follows:

"Q. During the time you didn't have an automobile, how did you get from place to place?

"A. By taxi and by my neighbors.

"Q. What all varied purposes had you used your car for?

"A. Well, transportation back and forth to my work.

"Q. Did you use it for anything else?

"A. That's all."

There was no adequate proof of damages for the loss of use of the respondent's automobile. The damages claimed for the loss of use are uncertain and unascertained. We think the trial Judge should have disallowed the $145.00 found by the jury as damages for the loss of use of respondent's automobile, because there was no adequate proof of such.

This Court may affirm *nisi* where damages improperly allowed can be segregated. *Padgett v. Calvert Fire Ins. Co.,* 223 S. C. 533, 77 S. E. (2d) 219. We think that the judgment of the respondent against the appellant should be affirmed in the amount of $1,100.00 as damages for the loss of respondent's automobile, together with $10.25 court costs, making a total of $1,110.25. It is, therefore, the judgment of this Court that unless the respondent remit upon the record, within ten days after the filing of the remittitur herein, with the Clerk of Court for Greenville County, the sum of $153.90, the judgment of the lower Court be reversed and a new trial granted; but if he so remits the sum of $153.90, the judgment is affirmed for $1,110.25. It is so Ordered.

TAYLOR, C. J., LEWIS and BUSSEY, JJ., and LEGGE, Acting Associate Justice, concur.