18953

CAROLINA EQUIPMENT AND PARTS COMPANY, Respondent, v. CONTINENTAL CASUALTY COMPANY, Appellant.

(169 S. E. (2d) 379)

*Messrs. Rogers & Riggs,* of Manning, *for Appellant,*

*Messrs. Berry, Lightsey, Gibbs and Bowers,* of Columbia, *for Respondent,*

August 20, 1969.

BRAILSFORD, Justice.

This is an action against the surety on a highway construction performance bond to recover rent for a dragline allegedly leased from plaintiff and used by a subcontractor in the performance of the construction contract. From a verdict in favor of the lessor of the machine, the surety appeals, charging that the court erred in failing to direct a verdict for it upon the grounds of *res judicata* and estoppel,

and, alternatively, charging that the court erred in failing to grant a new trial because of errors in the charge and in the admission of evidence. The essential facts are these.

Robert E. Lee & Company, Inc., was prime contractor on a segment of Interstate Route 26 in Charleston County, designated as South Carolina Docket Nos. 10.471 and 10.-472. Lee was also prime contractor on a segment of the same highway in Berkeley County, designated as South Carolina Docket No. 8.353. Lee, with Continental Casualty Company as surety, executed a standard highway contractor's performance bond covering each of these contracts. These segments of highway were both near Summerville and within five miles of each other. However, they were let at different times under distinct contracts and were covered by distinct performance bonds.

Lee subcontracted to Tom Wall Construction Company certain grading and dirt moving which was required on the Berkeley County job (Docket No. 8.353), whereupon Wall leased the dragline in question from Carolina Equipment and Parts Company. The term of the lease was for thirty-two months from May 1, 1961, to December 1, 1963, at a monthly rental of $800.00. Wall defaulted in the payment of rent for six months commencing January 1, 1962, and, at the end of this period, returned the dragline to the lessor.

Carolina sued Wall to judgment for the rent due, interest and attorneys' fees. Continental, as Lee's surety, was joined as a defendant in that action upon the mistaken allegation that the dragline had been used by Wall in the performance of Lee's Charleston job (Docket Nos. 10.471 and 10.472). The performance bond on which Continental was charged in the complaint related to the Charleston job. Carolina's right to recover against Continental on this bond depended upon proof that the rent accrued while the dragline was in use on the Charleston job, which it never was. The jury awarded $7,320.00 against Wall and awarded nothing against Continental.

Unable to collect the judgment against Wall, Carolina brought this action against Continental as surety on the performance bond covering the Berkeley County job (Docket No. 8.353). The complaint alleged that the unpaid rent accrued while the dragline was being used by Wall in the performance of his subcontract on this job and sought judgment against Continental for the amount recovered against Wall in the prior action, with interest and costs.

Continental denied that the machine had been used on this job during the period in question, pled the *verdict* in the former action as *res judicata* and pled that Carolina was estopped from maintaining this action by the testimony of its president in the prior action "that the equipment was used on a project in Dorchester (Charleston) County, as alleged in the prior action."

The plea of *res judicata* was properly overruled. The cause of action against the surety is on the performance bond covering the Berkeley County project. This bond was not declared upon the first action. The cause of action are different. Hence, the verdict in the former action is not *res judicata* of this action, even assuming that the *verdict,* in which Continental was not mentioned, would otherwise support the plea. See *Durst v. Southern Ry.,* 161 S. C. 498, 159 S. E. 844 (1931); 50 C. J. S. Judgments § 614.

The plea of estoppel is predicated solely upon the testimony of H. P. Stephenson, Carolina's president, at the first trial that he had seen the equipment at work on the Charleston County project (Docket Nos. 10.471 and 10.472). It is true that he did so testify when his attention was directed to the fact that these were the docket numbers involved in the litigation. However, Mr. Stephenson clearly stated that he knew nothing about the docket numbers of the various contracts let by the Highway Department along I-26, and that the docket number information from which he testified had been

secured by his attorneys from the Highway Department. Stephenson testified that he visited a Lee construction site on I-26 west of Summerville on which he saw Carolina's equipment in use. He did not know that Lee had more than one contract in this vicinity; he did not know whether the site which he visited was in Charleston County or in Berkeley County, because he did not know the location of the division line between the two counties. Quite clearly, the witness did not intend to testify that he saw the equipment in use on one Lee project as distinguished from the other because he was unaware that Lee had been awarded two contracts near Summerville.

We perceive of no reason to hold that Carolina is estopped to prosecute this action. Mr. Stephenson made an honest mistake in his testimony at the first trial as to docket numbers, a matter not within his own knowledge, but the substance of his testimony as to what he saw and did was the same at both trials and is nowhere challenged. Lee and its surety knew that the *only* Wall subcontract during the period in question was on the Berkeley County project and could not have been misled by Carolina's mistake. They also knew that the merits of Carolina's claim against Continental could not be reached on the complaint as framed in the first action. They simply elected to spring a surprise at the trial rather than to make a timely disclosure. Continental must at least share with Carolina the blame for the necessity of a second trial.

Appellant's question three is merely in aid of its *res judicata* argument which has already been overruled.

Under question four the appellant complains that the court permitted the case to be tried on the theory of *quantum meruit* and then submitted it to the jury on the basis of the judgment against Wall. The record simply does not support the claim that the case was tried on the theory of *quantum meruit*. Therefore, the exception on which this question is based is without merit.

Questions five, six and seven relate to jury instructions. They can best be disposed of after the following excerpt from the charge is quoted:

"I further charge you that the judgment obtained against Tom Wall Construction Company and the records of the judgment roll of this Court pertaining thereto, which are in evidence in this case, establish beyond question that plantiff did lease equipment to Tom Wall Construction Company under the rental agreement in evidence in this case and that the amount of that judgment which is in evidence is the amount due plaintiff on that rental obligation by that subcontractor.

"This leaves for you to determine from the greater weight or preponderance of the evidence (1) whether Robert E. Lee & Company, Inc., prime contractor on the highway construction contract for the construction of a part of Interstate 26 under Docket No. 8.353 in Berkeley County, did, as alleged in the complaint, subcontract a part of that work to Tom Wall Construction Company and if so, (2) whether that subcontractor, Tom Wall Construction Company, did, as alleged in the complaint, lease and use the road construction equipment in performance of the subcontracted work.

"If you find from the greater weight or proponderance of the evidence (1) that a part of the contracted work on Interstate 26 under Docket No. 8.353 in Berkeley County was subcontracted by the prime contractor, Robert E. Lee & Company, Inc. to Tom Wall Construction Company and that the leased equipment was leased and used by Tom Wall Construction Company in performing the subcontracted work, then your verdict should be for the plaintiff and in the amount of the judgment previously obtained plus the accrued interest on that judgment, that is to say, in the amount of $7,320.00 plus six percent interest or $7,759.20.

"However, should you also find that the equipment was only leased and used in performing the subcontracted work

for a portion of the time during which the unpaid rent for the equipment accrued, then you should determine for what portion of the period during which the unpaid rent accrued was the equipment leased and used by the subcontractor in performing the subcontracted work and write your verdict for a like portion of the total of the judgment obtained plus the six percent interest thereon. For example, if you find at the time that the equipment was so rented and so used only one-half of the time during which the unpaid rental accrued, then your verdict would be for only one-half of the total of the judgment and the six percent interest thereof; or, if only three-fourths of the time during which the unpaid rental accrued, then only for three-fourths of the total of the judgment and the six percent interest thereon, as the case may be, and so on and on as you may determine.

"Now by the time so rented and used, I do not mean that time the equipment was actually in operation but for the time for which it was under lease and available for use on the job in question. Should the equipment during the time that the unpaid rental was accruing have been removed for use on another job, for example, the rent accruing during the time that it was so removed would not be covered by the bond. Therefore, that portion of the rental obligation would not be included in the verdict."

By exception five, on which question 5 is based, Continental charges that the court erred in instructing the jury that the judgment in the former action against Wall was binding upon it. As the foregoing quotation readily shows, this is a misconception of the charge. The jury was instructed that the judgment was conclusive as to Wall, but not so as to Continental.

We quote exception 3 on which question 6 is based:

"3. That His Honor, the Trial Judge, erred in instructing the jury that they should find a verdict in an amount based on the judgment obtained against Tom Wall arrived

at by the portion of time the said equipment was available for use on the Lee project, the error being that said judgment included interest and attorneys fees from which this Defendant was exonerated in the suit in which the judgment was obtained as well as rent payments. The error further being that the instant case was tried on the theory of *quantum meruit,* His Honor specifically directing during the progress of the trial that attorneys fees will be reserved for a determination after the trial of the case."

Waiving the point that the exception undertakes to state more than one assignment of error, we agree that the sum assessed as attorneys' fees against Wall in the first action is not binding upon Continental. The extent of Continental's liability for attorneys' fees was for determination by the court or jury in this action. However, the amount allowed as attorneys' fees in the first action is readily ascertainable, and it is well settled that we may affirm *nisi* where damages improperly allowed may be segregated. *Fuller v. Eastern Fire & Cas. Ins. Co.,* 240 S. C. 75, 92, 124 S. E. (2d) 602, 611 (1962). This will be done.

No reason has been suggested for holding the surety liable for the rents accruing under the lease agreement, while the dragline was being used on the Wall sub-contract, but not liable for the interest falling due thereon under the same agreement. None occurs to us.

The remainder of exception 3 is without merit for the reason stated in overruling question 4.

By exception 6, which is argued under question 7, error is charged in the last paragraph of the foregoing quotation from the charge, "the error being that (the equipment) must not only be available, but it must be needed, required or used on the project." As we read the exception and the brief, the complaint is that the court failed to have the jury pass upon whether the dragline was needed and useful on the job. Even if need for leased

equipment on a bonded job is a condition of the surety's liability for unpaid rent, there is no merit in the exception. It is clear from the record that equipment of this type was essential to the performance of the Wall subcontract and was in use throughout the period in which the rent became delinquent. The evidence raised no issue of fact for submission to the jury as to the need for or usefulness of the leased equipment. If the instruction was incomplete in this respect, the surety suffered no prejudice.

Exception 7, on which question 8 is founded, charges that the court erred in admitting the testimony of A. R. Catoe, resident highway engineer, as to interviews with Wall employees, the error being that the testimony violated the hearsay rule. There are several reasons why this exception is without merit. Suffice it to say that we have searched the transcript of this witness' testimony with care and have found no instance in which testimony of this tenor was let in by the court after an objection based upon the hearsay rule had been made.

Before the trial of this action, the defendant made a motion to dismiss upon the grounds of *res judicata,* contending that the same issue had been tried between the same parties in the first action. This motion was overruled by Judge Rosen, who held, as we do, that since the first action was on an entirely different performance bond, covering a different construction contract, the judgment in that action was not *res judicata* of this action. After commenting on this pretrial order, the presiding judge stated to the jury:

"In short, what that other Judge held in this case was that plaintiff sued the defendant on the wrong bond in the former action. It is to be determined by the evidence in this case, and this is my language now, not a former Judge, whether the defendant is now being sued on the right one."

Continental charges that the court erred in giving this instruction, the error assigned "being that no such hold-

ing had been made in the case and no instruction was justified." We disagree. It is conceded by all that the first action was on the wrong bond and this is at least implicit in the pretrial order. The instruction was an appropriate means of expounding to the jurors that the event of the first trial was wholly irrelevant to the merits of the second and should not enter into their deliberations.

Under the tenth and final subdivision of the brief, Continental urges that the evidence is insufficient to establish that it is liable to Carolina on the bond. The argument is presented under two subquestions as follows:

"(a) Is testimony of the machine being seen on project during February and March sufficient to infer its being on project February through July?

"(b) Is appellant liable under bond for rents owed by subcontractor?"

The testimony abundantly establishes that the dragline was delivered to Wall on the construction site and was used by him in performing the contract. Carolina's place of business is in Richland County and no surveillance of the job was undertaken. Mr. Stephenson did visit the work site three times and another of Carolina's employees visited it as often. On each of these occasions the dragline was in use on the job or standing by for use. Mr. Stephenson and Mr. Wall, who, inferentially, was devoting his full time to this job, were otherwise in touch with each other. Mr. Stephenson testified without objection that the dragline was in use on this project during the entire period that it was in Wall's possession under the lease. There was no testimony, not even an intimation, to the contrary. The infrequency of Mr. Stephenson's personal observations of the machine at the job site would only affect the weight of his testimony. We have no doubt as to the sufficiency of the evidence on this issue to support the verdict.

The final argument advanced is that rent for the leased dragline is not within the obligation of the performance bond. We do not reach the merits of this question because it is not raised, or even suggested, by the most liberal construction of the exceptions.

We have disposed of all questions raised adversely to appellant's claim except that relating to the attorneys' fee awarded against Wall in the first action. The principal amount of the rent due was $4800.00. Interest to the date of trial, as indicated by the record, was $1806.00. The allowance of attorneys' fees at the second trial was reserved to the court, and plaintiff was entitled to no more than the sum of these figures. The verdict exceeded this amount by $714.00 and to this extent was excessive.

The judgment of this court is that the judgment of the lower court be reversed and a new trial granted unless, within ten days after filing of the remittitur herein, the plaintiff remit upon the record the sum of $714.00; but if it so remit this sum, the judgment is affirmed for $6,606.00.

And it is so ordered.

Moss, C. J., and Lewis and Bussey, JJ., concur.

Littlejohn, Justice (dissenting).

Heretofore I prepared an opinion reversing the lower court on the ground of *estoppel*. A majority of the court now having taken the opposite view, that opinion is herewith printed as my dissent.

The plaintiff herein procured a jury verdict against the defendant by reason of a highway contractor's performance bond executed by the defendant. The defendant appealed, alleging, among other things, that the trial judge should have directed a verdict in its favor on the ground of *estoppel*.

### Background of Litigation

In 1959 Robert E. Lee and Company, Inc., as prime contractor, entered into an agreement with South Caro-

lina State Highway Department to construct a section of Interstate Route 26 on South Carolina Docket No. 8.383 in Berkeley County, hereinafter referred to as the Berkeley County project.

In accordance with the contract for construction, Lee, as principal, and Continental Casualty Company, as surety, executed a standard highway contractor's performance bond. The condition of the obligation bound Lee to well and truly perform the terms and conditions of the construction contract and to pay all claims for labor performed and for materials and supplies furnished for use on the Berkeley County construction project.

Lee subcontracted a portion of the work to the Tom Wall Construction Company. Tom Wall leased certain construction equipment hereinafter referred to as a drag line, from the plaintiff herein, Carolina Equipment and Parts Company, and used it on the subcontracted job. Tom Walls failed to pay Carolina Equipment for six months rent from February to July, 1962 inclusive.

### The First Action

Upon Wall's failure to pay rental to Carolina Equipment for these six months, Carolina Equipment sued both Wall and Continental as surety on Lee's primary contractor's bond. Continental interposed a general denial among other defenses.

That action against Wall and Continental was brought in Dorchester County and was bottomed on allegations that Wall performed services from February to July, 1962 in Charleston County on highway Dockets Nos. 10.471 and 10.472, hereinafter referred to as the Charleston County project (not the project referred to above). That action ended in a verdict in favor of Carolina Equipment against Wall only, in the amount of $7,330 representing rental plus interest and attorney fees as provided in the rental agreement. The jury found in favor of Continental. Wall is insolvent and the sheriff returned a *nulla bona* on the execution.

In that action H. P. Stephenson, president of the Carolina Equipment and Parts Company, who verified the complaint and who was the principal witness, testified unequivocally that Tom Wall used the equipment on the Charleston County project during the rental period involved. Such was consistent with the allegations of the verified complaint. It was on the basis of this testimony and other evidence that the jury wrote a verdict against Tom Wall and exonerated Continental.

## The Present Action

The second action (now here on appeal) is bottomed on allegations that Wall performed services from February to July, 1962 in Berkeley County on highway Docket No. 8.383. The plaintiff is the same as in the former action, but Continental alone is made defendant and is sued as surety on the performance bond furnished by Lee to the Highway Department; recovery upon plaintiff's judgment in the former action is sought for unpaid rental installments, interest, and attorney fees. Both the prior action and the present action were for rental of the same equipment between the same lessor and lessee for the same period. The allegations in the two respective complaints are obviously irreconcilable.

Continental having prevailed in the first action plead estoppel, *res judicata* and laches.

In this action Stephenson, as president of the Carolina Equipment and Parts Company, changed his testimony and testified unequivocally that subcontractor Wall used the drag line leased from Carolina Equipment on the Berkeley County project during the time for which rentals were unpaid. At the end of all testimony counsel for Continental moved for a directed verdict on the ground, among others, that Carolina Equipment should be estopped to bring this action because "The Plaintiff having elected its remedy in the former action should not now be allowed to follow a course or a case based on different facts or

facts inconsistent with those relied upon in the former action." The motion was overruled and the jury found a verdict in favor of Carolina Equipment against Continental for the amount of the previous judgment procured against Wall, or $7,330.

This appeal is taken by Continental from the order of the lower court denying the motions for a directed verdict. Several exceptions are framed and ten questions are posed in appellant's brief. However, because of the view we take, a ruling on the question of estoppel will dispose of the appeal.

Carolina Equipment finds itself in the very uncomfortable position of having convinced two separate Dorchester County juries of facts which are irreconcilable. It is also in the unusual position of retaining and attempting to collect a judgment against Wall which it now contends was procured by its own false testimony. It would force a debt on the surety based on the contention that the judgment in the first case was procured erroneously against the principal debtor. Patently one verdict or the other is improper. This court should not speculate as to which time the witnesses were telling the truth.

Principles of estoppel are based on prejudice or injury to the one in whose behalf it is allowed, and it is permitted in order to prevent one party from adopting an inconsistent position, attitude or course of conduct to the loss or injury of another party. In judicial proceedings, fairness to one's adversary requires that at some point a party be bound by a factual position he has formerly taken before the court. The salutary effects of and the necessity for a rule binding a party at some point to his chosen factual position are present whether the position was maintained honestly or dishonestly, carefully or negligently. The costs and expense of litigation and the vexation to the party sued is the same regardless of the cause.

Apparently during the course of the first trial it became obvious that Wall had not performed services on the Charles-

ton County project between February and July, 1962, and that Continental's bond did not cover the Charleston County project. Continental would not of course be liable in any event unless Wall was liable for the debt. The plaintiff had, however, submitted evidence, including the testimony of its own president, sufficient to make a jury issue against Wall and Continental and the court in the first suit could not grant a directed verdict. If the jury had believed the testimony as it applied to the surety and had found against Continental, the court could have granted no relief as a matter of law. Sufficient facts were sworn to to make a jury issue.

The present record does not include all of the proceedings in the first trial. The statement of Mr. Rogers, of counsel for Continental, to the trial judge in this action, in the presence of his adversary, is significant:

"All right, sir. I think in fairness to my client, Your Honor, I would like to say this. First of all, I would like to say this, plaintiff's counsel cannot disagree with this, that in the course of the former suit, we thought that it had been established beyond any question whatever that the former —that docket on which the former action was brought was not in the course of being constructed at the time that they alleged. This was discovered during the course of the trial. Judge Eppes called us back in there. He asked plaintiff if he didn't want to take a voluntary nonsuit and start over. This was discussed for thirty minutes or more. All of the attorneys that are here today were sitting in the Judge's chamber. They refused. They said there [sic] were on the right one. They said they had made out a case and were entitled to go to the jury and they went. Now, certainly, Your Honor can't put any blame on the defendant."

Opposing counsel did not deny Mr. Rogers' statement of this occurrence. Such statement from counsel came because the trial judge, in ruling out estoppel, apparently attached some significance to the fact that Mr. Lee of the

Robert E. Lee Construction Company, Inc., who verified Continental's answer, failed to acquaint the defendant in the first action with the fact that the plaintiff was suing on the wrong bond. The burden of proving the case was of course on the plaintiff and Continental could be held liable only secondarily. We do not think it was the duty of Mr. Lee, under our adversary system, to supply facts to the plaintiff to assist in procuring a valid judgment against Wall and in turn against Continental. The obligation of Lee and of Continental at most was not to affirmatively misrepresent facts.

Carolina Equipment has asserted the existence of one state of facts in the first action, and being unsuccessful against Continental in that action should not now be heard to assert a different state of facts inconsistent with those asserted in the first action. It should no be permitted to change positions and harass the defendant with another action and the expense incident thereo based on inconsistent facts. See *White v. Livingston*, 234 S. C. 74, 106 S. E. (2d) 892.

Continental has been forced to defend two suits and has been exposed to liability in each case. Had Carolina Equipment agreed to the voluntary nonsuit in the first action as suggested by the trial judge its position would have much appeal, but having elected to cast its lot with the jury based on the testimony it had brought into court, we think it is now estopped to bring this action and the circuit judge should have so ruled.

It is unnecessary to rule on the other issues raised by the exceptions. The lower court should be,

Reversed.