THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING   EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
H. William Chandler d/b/a GME Engineering, Respondent,
v.
S & T Enterprises of Anderson, Inc.; SNT Enterprises of Anderson, Inc., a/k/a S & T Enterprises of Anderson, Inc.; William S. Shepard, Harshad Raja, and Beverly Bell d/b/a The Summit of Anderson; Carolina First Bank; Leasecomm Corporation; and JHM Greenville, Inc.;
Defendants,
of whom S & T Enterprises of Anderson, Inc.; SNT Enterprises of Anderson, Inc., a/k/a S & T Enterprises of Anderson, Inc.; William S. Shepard, Harshad Raja, and Beverly Bell d/b/a The Summit of Anderson are,
Appellants.
 
 
 

Appeal From Anderson County
 J. C. Buddy Nicholson, Jr., Circuit Court Judge

Unpublished Opinion No. 2006-UP-053
Heard January 10, 2006  Filed January 24, 2006

AFFIRMED AS MODIFIED

 
 
 
Harold P. Threlkeld, of Anderson, for Appellants.
Mark Stan Meglic, of Greenville and Stephanie Holmes Burton, of Spartanburg, for Respondent.
 
 
 

PER CURIAM:  H. William Chandler d/b/a GME Engineering (together, GME) brought this action to foreclose a mechanics lien against S & T Enterprises of Anderson, Inc., the owner of commercial property, and The Summit of Anderson, the developer of the property.  S & T Enterprises and The Summit, in turn, asserted counterclaims for breach of contract, breach of implied warranty, and professional negligence.  The trial court granted a directed verdict in favor of GME on all claims.  S & T Enterprises and The Summit appeal.  We affirm as modified.
I.  Mechanics Lien.  S & T Enterprises and The Summit first contend the trial court erred in directing a verdict for GME on GMEs claim for foreclosure of a mechanics lien.  They further contend the trial court erred in setting the amount of the verdict at $16,420.41, when the amount of the mechanics lien as originally filed was $13,633.69.    
Section 29-5-10(a) of the South Carolina Code provides a person furnishing labor or materials for a building or structure upon real estate may obtain a mechanics lien to secure payment of the unpaid debt.  S.C. Code Ann. § 29-5-10(a) (Supp. 2005).  As used in this section, labor includes the preparation of plans, specifications, and design drawings and the work of making the real estate suitable as a site for the building or structure.  Id.
The agreement dated July 16, 2001, between GME and The Summit set forth an estimated cost of $16,200.00 and provided GME would submit monthly invoices to The Summit and a final bill upon completion of services.  Under the contract payment was due within fifteen days after the receipt of invoice and interest charges will start thirty days from invoice date.  The testimony showed GME had submitted invoices to The Summit and had previously stopped work on the project several times because of nonpayment of the invoiced amounts.    
On January 11, 2002, GME notified The Summit that it had not received all of the amounts previously invoiced and that the outstanding balance was then $13,256.41 and that it would be forced once again to stop work on the project until the balance due was paid.  GME stated it would submit permits for the project once the invoices were paid.  
On February 1, 2002, GME again notified The Summit that it had not received all of the amounts previously invoiced and attached a report showing a total invoiced amount of $18,256.41, with only $8,000.00 received in payment.  GME indicated it would be pleased to work on the permitting phase of the project once the invoices had been paid in full.  On February 6, 2002, GME wrote to The Summit and advised it was terminating the contract effective February 13th for continued nonpayment of the invoiced amounts.  GME sent three final invoices to The Summit dated February 7, 2002, for the additional amounts of $1,200.00, $2,177.28, and $2,786.72, giving a balance due of $16,420.41.  
The trial court concluded GME was entitled to a directed verdict as to . . . [the] claim for foreclosure of the Mechanics Lien in the amount of $16,420.41, interest, reasonable attorney fees and costs.  The trial court granted GMEs motion to amend its complaint to conform to the evidence to seek $16,420.41, although the original amount of the lien sought was $13,633.69.  
We hold the evidence supports GMEs motion for a directed verdict on its claim for foreclosure of a mechanics lien.  The testimony establishes that GME improved the subject property through its labor, including the preparation of plans, specifications, designs, and drawings.  GME drafted conceptual drawings and conducted soil testing on the property, the results of which were submitted to The Summit on August 3, 2001.  GME also secured the services of Allees Landscape Architecture in Newberry, South Carolina, for the preparation of grading plans, utility drawings, and other items required by the parties contract.  GME subcontracted with Jamie McCutcheon, a registered engineer specializing in storm water runoff, who provided storm water calculations for the project site.  The Summit admittedly never paid GMEs invoices in full and the partial payments that it did make were untimely.    
As to the amount of the verdict awarded, GMEs counsel conceded during oral argument before this court that $2,786.72 included in the verdict was for an item not properly recoverable under the mechanics lien statute and consented to the reduction of the judgment by this amount.[1]  Thus, based on counsels request and consent, the directed verdict in favor of GME on the claim for foreclosure of its mechanics lien is affirmed as modified to reduce it by the amount of $2,786.72.    
II.  Counterclaims.  S & T Enterprises and The Summit next argue the trial court erred in directing a verdict in favor of GME on their counterclaims for breach of contract and professional negligence.[2]
Initially, we note that, although the argument on the breach of contract claim incorporates a list of twenty factual allegations, no record cites are given for these facts; further, the argument contains no citations to legal authority.  See, e.g., Fields v. Melrose Ltd. Partnership, 312 S.C. 102, 106 n.3, 439 S.E.2d 283, 285 n.3 (Ct. App. 1993) (noting where the argument on appeal consists of short, conclusory statements without citation to supporting legal authority, the argument could be deemed abandoned).
In any case and as to the merits, we find no error in the trial courts decision to direct a verdict on the counterclaim for breach of contract.  In order to establish a claim for breach of contract, a party must prove (1) the existence of a contract between the parties, (2) a breach, and (3) damages proximately caused by such breach.  See Fuller v. E. Fire & Cas. Ins. Co., 240 S.C. 75, 89, 124 S.E.2d 602, 610 (1962).
The evidence before the trial court was that GME had repeatedly sent invoices to The Summit that remained unpaid.  By February 2002, there was an outstanding balance of more than $10,000.00.  At that time, GME advised The Summit that it would no longer be working on the project.  Most of the project had been competed by GME, although it had not released its final plans and drawings due to the fact that the invoices were unpaid.  
S & T Enterprises and The Summit argue [t]he testimony and evidence elicited was susceptible to an inference that [GME] abandoned the contract without fulfilling its requirements and caused them damages because they had to hire a successor engineer to complete the project.  All the evidence, however, suggests work on the project was terminated only for nonpayment of the invoices.  See Minter v. GOCT, Inc., 322 S.C. 525, 527, 473 S.E.2d 67, 69 (Ct. App. 1996) (stating if the evidence does not yield more than one inference, a directed verdict in favor of the moving party is proper).   
S & T Enterprises and The Summit additionally argue the trial court erred in directing a verdict in favor of GME on their counterclaim for professional negligence.
To establish a claim for professional negligence, the plaintiff must prove the professionals standard of care, the professionals breach of that standard, and resulting damages proximately caused by the breach. 
Walker v. The Bluffs Apartments, 324 S.C. 350, 354, 477 S.E.2d 472, 474 (Ct. App. 1996).  Generally, expert testimony is required to establish both the standard of care and the defendants deviation from that standard.  Id.  [T]he standard of care that the plaintiff must prove is that the professional failed to conform to the generally recognized and accepted practices in his profession.  Doe v. Am. Red Cross Blood Servs., 297 S.C. 430, 435, 377 S.E.2d 323, 326 (1989).
We hold the trial court did not err in granting a directed verdict in favor of GME on the counterclaim for professional negligence.  S & T Enterprises and The Summit correctly note that expert testimony is not required to establish the standard of care where the professional admits that the action complained of would amount to a violation of duty, relying on Sims v. Hall, 357 S.C. 288, 592 S.E.2d 315 (Ct. App. 2003).  They allege the owner of GME, William Chandler, expressly admitted his conduct violated his professional duty, thus conclusively determining the standard of care.  
At trial, Chandler was asked to assume, hypothetically, that he had advised The Summit that it was authorized to begin grading the subject property based on a prior grading permit issued in 1997 and to state whether this would have been incorrect and thus a violation of [his] duty to The Summit.  The trial court found this generalized hypothetical did not sufficiently establish the standard of care of a professional engineer, and that an expert would be necessary to testify as to whether GME, through the actions of Chandler, met the applicable standard of care.    
We conclude Chandlers brief testimony on this point does not establish the standard of care of a professional engineer, and even assuming Chandlers testimony regarding the hypothetical did set the standard, as S & T Enterprises and The Summit argue, there is no evidence reasonably sufficient to create a jury issue regarding whether GME breached the standard.  Thus, we affirm the trial courts decision to grant a directed verdict to GME on the counterclaim for professional negligence.  Am. Red Cross Blood Servs., 297 S.C. at 435, 377 S.E.2d at 326 (If the plaintiff is unable to demonstrate that the professional failed to conform to the generally recognized and accepted practices in his profession, then the professional cannot be found liable as a matter of law.).  
For the foregoing reasons, the decision of the trial court is
AFFIRMED AS MODIFIED.
GOOLSBY, ANDERSON, and SHORT, JJ., concur.

[1]  GME had sought a mechanics lien of $13,633.69 in its original filing, but at trial it advised the court that it was seeking $16,420.41 because a final invoice for $2,786.72 had been inadvertently omitted from the total.  
[2]  S & T Enterprises and The Summit raise no issue on appeal regarding their  counterclaim for breach of implied warranty.